UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PEREZ, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DNC PARKS & RESORTS AT ASILOMAR, INC., a California Corporation, et al.,<br><br>Defendants. | No. 1:19-cv-00484-DAD-SAB<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE THE PROPOSED FIRST AMENDED COMPLAINT, AND GRANTING PLAINTIFF LEAVE TO AMEND<br><br>(Docs. No. 17, 27) |

This matter is before the court on a motion for judgment on the pleadings filed on behalf of defendants DNC Parks & Resorts at Asilomar, Inc. ("Asilomar"), DNC Parks & Resorts at Sequoia, Inc. ("Sequoia"), DNC Parks & Resorts at Yosemite, Inc. ("Yosemite"), Delaware North Companies, Inc. ("DNCI"), DNC Parks & Resorts at Kings Canyon, Inc. ("Kings Canyon"), DNC Parks & Resorts at Tenaya Inc. ("Tenaya"), and Delaware North Companies Parks & Resorts, Inc. ("DNCPRI") (collectively, "defendants") and plaintiff David Perez's motion for leave to file a first amended complaint. (Doc. Nos. 17, 27.) On September 17, 2019, those motions came before the court for hearing. Attorneys Irina Kirnosova and Mikael Stahle appeared telephonically on behalf of plaintiff. Attorneys Jonathan L. Brophy and Lauren R. Leibovitch appeared telephonically on behalf of defendants. Having considered the parties' briefing and

1    arguments, defendants' motion for judgment on the pleadings is granted and plaintiff's motion for

2    leave to file the proposed first amended complaint is denied.  Plaintiff, however, will be granted

3    leave to amend.

4                                              **BACKGROUND**

5            Plaintiff's action was originally filed on February 28, 2019, in Tulare County Superior

6    Court as a class action, alleging violations of California's Labor Code and Unfair Competition

7    Law ("UCL") and a Private Attorneys General Act ("PAGA") claim.  (Doc. No. 1, Ex. A

8    ("Compl.") at ¶¶ 18–65.)  As alleged in the complaint, plaintiff was a former employee of

9    defendants.  (Compl. at ¶ 3.)  According to plaintiff:

> DEFENDANTS . . . acted pursuant to, and in furtherance of, their
> policies and practices of not paying PLAINTIFF and CLASS
> MEMBERS all wages earned and due, through methods and schemes
> which include, but are not limited to, failing to pay overtime
> premiums; failing to provide rest and meal periods; failing to
> properly maintain records; failing to provide accurate itemized
> statements for each pay period; failing to properly compensate
> PLAINTIFF and CLASS MEMBERS for necessary expenditures;
> and requiring, permitting, or suffering the employees to work off the
> clock . . ..

16   (*Id.* at ¶ 3, 15.)  The relevant time period alleged by plaintiff is the four years prior to the filing of

17   this action, to continue while this action is pending.  (*Id.* at ¶ 4.)

18           Defendants answered plaintiff's complaint on April 10, 2019 (Doc. No. 1-2) and removed

19   the action to this federal court on April 12, 2019 on the basis of federal question jurisdiction and

20   the Class Action Fairness Act ("CAFA").  (Doc. No. 1.)  On July 9, 2019, defendants filed the

21   pending motion for judgment on the pleadings and plaintiff subsequently moved for leave to file a

22   first amended complaint on August 19, 2019.  (Docs. No. 17, 27.)

23                                         **LEGAL STANDARDS**

24   **A.      Motion for Judgment on the Pleadings**

25           Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are

26   closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

27   In reviewing a motion brought under Rule 12(c), the court "must accept all factual allegations in

28   /////

                                                    2

the complaint as true and construe them in the light most favorable to the nonmoving party."

*Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

The same legal standard applicable to a Rule 12(b)(6) motion applies to a motion brought pursuant to Rule 12(c). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, "judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Marshall Naify Revocable Tr. v. United States*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting *Fajardo v. Cty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)); *see also Fleming*, 581 F.3d at 925 (noting that "judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law"). The allegations of the nonmoving party must be accepted as true, while any allegations made by the moving party that have been denied or contradicted are assumed to be false. *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006). The facts are viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn in favor of that party. *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 360 (9th Cir. 2005).

Courts have discretion both to grant a motion for judgment on the pleadings with leave to amend or to simply grant dismissal of causes of action rather than grant judgment as to them. *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted); *see also Pac. W. Grp. v. Real Time Sols., Inc.*, 321 Fed. App'x 566, 569 (9th Cir. 2008);[1] *Woodson v. State of California*, No. 2:15-cv-01206-MCE-CKD, 2016 WL 524870, at *2 (E.D. Cal. Feb. 10, 2016). Generally, dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (noting that "[l]eave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility").

---

[1] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    **B.      Motion for Leave to Amend**

2              Under Rule 15 of the Federal Rules of Civil Procedure, once an answer has been filed, a

3    party may amend a pleading only with leave of court or after obtaining the written consent of the

4    adverse party.  *See* Fed. R. Civ. P. 15(a).  A court should grant leave to amend freely when justice

5    so requires.  *Id.*  The Supreme Court has instructed lower courts to heed carefully the command of

6    Rule 15.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  "[R]ule 15's policy of favoring

7    amendments to pleadings should be applied with extreme liberality."  *DCD Programs Ltd. v.*

8    *Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citations and internal quotations omitted); *see also*

9    *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000).  As the Supreme Court has articulated:

10                   In the absence of any apparent or declared reason—such as undue
                     delay, bad faith or dilatory motive on the part of the movant, repeated
11                   failure to cure deficiencies by amendments previously allowed,
                     undue prejudice to the opposing party by virtue of allowing the
12                   amendment, futility of the amendment, etc.—the leave sought
                     should, as the rules require, be "freely given."
13

14   *Foman*, 371 U.S. at 182*; see also Bowles v. Reade*, 198 F.3d 752, 757–58 (9th Cir. 1999).  "Not

15   all of the factors merit equal weight.  As this circuit and others have held, it is the consideration of

16   prejudice to the opposing party that carries the greatest weight."  *Eminence Capital, LLC v.*

17   *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also Sonoma Cty. Ass'n of Retired Emps.*

18   *v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).  "Absent prejudice, or a strong showing of

19   any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of

20   granting leave to amend."  *Eminence Capital, LLC*, 316 F.3d at 1052; *see also Sonoma Cty. Ass'n*

21   *of Retired Emps.*, 708 F.3d at 1117.

22                                        **DISCUSSION**

23   **A.      Motion for Judgment on the Pleadings**

24             Defendants move for judgment on the pleadings based primarily on the federal enclave

25   doctrine and for failure to state a claim.  The court will address each of defendants' arguments,

26   and plaintiff's responses, if any, below.

27   /////

28   /////

                                              4

1    1.    The Federal Enclave Doctrine

2        Defendants Yosemite, Sequoia, and Kings Canyon argue that the federal enclave doctrine

3    bars plaintiff from asserting against them any causes of action based on state laws that came into

4    force after Yosemite, Sequoia, and Kings Canyon National Parks became federal enclaves.  (Doc.

5    No. 17-1 at 13.)

6        The federal enclave doctrine applies:

7            [W]hen the United States acquires with the "consent" of the state
             legislature land within the borders of that State. . . .  [In such cases,]
8            the jurisdiction of the Federal Government becomes "exclusive." The
             power of Congress over federal enclaves that come within the scope
9            of Art. I, § 8, cl. 17 . . . bars state regulation without specific
             congressional action.  This exclusive jurisdiction is "legislative,"
10           meaning the laws and statutes applied to these locations must be
             supplied by the federal government, not the states.  When Congress
11           legislates with respect to . . . federal enclaves it acts as a state
             government with all the powers of a state government, and thus
12           Congress acts as a state government with total legislative, executive
             and judicial power.
13

14   *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1236–37 (10th Cir. 2012) (citations and

15   internal quotations omitted).

16       However, "when an area in a State becomes a federal enclave . . . the [state] law in effect

17   at the time of the transfer of jurisdiction continues in force. . . .  Existing state law typically does

18   not continue in force, however, to the extent it conflicts with 'federal policy.'  And going

19   forward, state law presumptively does not apply to the enclave." *Parker Drilling Mgmt. Servs.,*

20   *Ltd. v. Newton*, ___ U.S. ___, 139 S. Ct. 1881, 1890 (2019) (citations and internal quotations

21   omitted); *see also Cooper v. S. Cal. Edison Co.*, 170 F. App'x 496, 497 (9th Cir. 2006), *as*

22   *amended on denial of reh'g and reh'g en banc* (May 10, 2006) ("Only federal law applies on a

23   federal enclave, but preexisting state law not inconsistent with federal policy becomes federal law

24   and is applicable as well.") (citing *Paul v. United States,* 371 U.S. 245, 263–64 (1963)).[2]

25       The following statutes and orders form the basis of plaintiff's complaint in this case:  (1)

26   California Labor Code §§ 201–203, 510, 1174, 1194, 1197, 1198, and 2802, enacted in 1937, for

27

28   [2] *See* fn. 1, above.

the First, Third, Fourth, Fifth, Seventh, and Eighth Causes of Actions; (2) California Labor Code § 226, enacted in 1943, for the Sixth and Seventh Causes of Actions; (3) California Labor Code § 512, enacted in 1999, for the First and Second Causes of Actions; (4) California Labor Code § 226.7, enacted in 2000, for the First and Second Causes of Actions; (5) California Labor Code §§ 2698–2699.5, enacted in 2003 and 2004, for the Tenth Cause of Action; (6) California Business & Professions Code § 17200 et seq., enacted in 1997, for the Ninth Cause of Action; and (7) IWC Wage Order No. 5-2001, issued in 1986, for the First, Second, Third, Fourth, Sixth, and Seventh Causes of Action.  (Compl. at ¶¶ 19–65.)

<blockquote>

a. *Plaintiff's Claims Against Defendants Yosemite and Sequoia Are Barred by the Federal Enclave Doctrine*
</blockquote>

Defendants Yosemite and Sequoia operate in the Yosemite and Sequoia National Parks, which have been federal enclaves since June 2, 1920.  16 U.S.C. § 57 ("Sole and exclusive jurisdiction is assumed by the United States over the territory embraced and included within the Yosemite National Park [and] Sequoia National Park").  As indicated above, all of plaintiff's claims against defendants Yosemite and Sequoia rely solely on state law passed *after* the Yosemite and Sequoia National Parks became federal enclaves.  Thus, plaintiff's claims against defendants Yosemite and Sequoia are presumptively barred.  *See Parker Drilling Mgmt. Servs.*, 139 S. Ct. at 1890 (holding that state laws passed after an area becomes a federal enclave "presumptively [do] not apply").

In addition, plaintiff fails to respond in his opposition to defendants' argument in this regard, effectively conceding his claims against defendants Yosemite and Sequoia.[3]  *See Contreras v. Esper*, No. 2:14-cv-01282-KJM-KJN, 2018 WL 1503678, at *3 (E.D. Cal. Mar. 27, 2018) (citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010) ("A plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss . . . has effectively abandoned his claim . . . .") and *Moore v. Apple,*

---

[3]  Plaintiff acknowledged at the hearing on the pending motion that his state law claims against defendants Yosemite and Sequoia are barred by the federal enclave doctrine but argued that he should be given leave to bring federal Fair Labor Standards Act claims against them.

*Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) (collecting cases and finding that abandonment of a claim warrants dismissal without leave to amend or with prejudice)).

Accordingly, plaintiff's claims against defendants Yosemite and Sequoia will be dismissed with prejudice.

> b. *Plaintiff's Claims Against Defendant Kings Canyon Are Barred in Part by the Federal Enclave Doctrine*

Defendant Kings Canyon operates in Kings Canyon National Park ("KCNP"), which both parties contend became a federal enclave on August 4, 1943.

Defendants argue that plaintiff's First, Second, Third, Fourth, Sixth, Seventh, Ninth, and Tenth Causes of Action are barred by the federal enclave doctrine as to defendant Kings Canyon because they are based on state laws that came into effect after KCNP became a federal enclave. (Doc. No. 17-1 at 15.) Plaintiff responds that California Labor Code §§ 510, 1174, 1194, 1197, and 1198, the bases for his First, Third, and Fourth Causes of Action, were enacted in 1937, before KCNP was created. (Doc. No. 20 at 20.) However, plaintiff fails to respond to defendants' arguments regarding the IWC Wage Order and the Second, Ninth, and Tenth Causes of Actions, effectively conceding the merit of defendants' motion as to those causes of action. Accordingly, plaintiff's Second, Ninth, and Tenth Causes of Action are dismissed with prejudice as to defendant Kings Canyon. To the extent claims against defendant Kings Canyon are predicated on IWC Wage Order No. 5-2001, they are also dismissed with prejudice.

Plaintiff also argues that California Labor Code § 226, partly serving as the basis for his Sixth and Seventh Causes of Action, remains in force at KCNP because it went into effect on August 4, 1943, the same day the State of California purportedly ceded jurisdiction over KCNP to the federal government. (Doc. No. 20 at 19–20.) Defendants counter this argument on the grounds that, "[a]lthough Section 226 was enacted on the same day that the federal enclave at Kings Canyon was created, it was not already 'in existence' at the time the enclave was created" and thus does not apply in KCNP. (Doc. No. 25 at 10.)

The court concludes that both parties have missed the mark in this regard. What both parties fail to recognize is that KCNP did not became a federal enclave until June 1, 1945. KCNP

was proclaimed on March 4, 1940. *See* 16 U.S.C. § 80 (reserving and withdrawing an area of California land "from settlement, occupancy, or disposal under the laws of the United States [to] dedicate[] and set apart as a public park, to be known as the Kings Canyon National Park"). On August 4, 1943, California passed 1943 Cal. Stat. 801, which provides that "[e]xclusive jurisdiction shall be and the same is hereby ceded to the United States over and within all of the territory . . . set aside and dedicated for park purposes by the United States as 'Kings Canyon National Park.'" However, that statute specified that "[t]he jurisdiction granted by this section shall not vest until the United States though the proper office notifies the State of California that it assumes police jurisdiction over said park." *Id.* That happened when the U.S. Secretary of Interior, in a letter to the Governor of California, accepted on behalf of the United States "exclusive jurisdiction over all lands now included in Kings Canyon National Park" and gave notice that the United States had assumed "police jurisdiction over the said park," effective June 1, 1945. Police Jurisdiction Assumed by U.S., 10 Fed. Reg. 6,041 (Apr. 21, 1945). Thus, federal administration of the park was concurrent with state jurisdiction from March 4, 1940 until the United States accepted *exclusive jurisdiction* on June 1, 1945.

Moreover, federal law is clear that a federal enclave is created when the United States assumes exclusive jurisdiction over land within a State. *See Allison*, 689 F.3d at 1236–37. "[S]tate law *existing at the time of the acquisition* remains enforceable, not subsequent laws." *Paul*, 371 U.S. at 268 (emphasis added); *see also Carvajal v. Pride Indus., Inc.*, No. 10 CV 2319-GPC(MDD), 2013 WL 1728273, at *5 (S.D. Cal. Apr. 22, 2013) ("Under the federal enclave doctrine, state laws have no effect on federal enclaves unless *they preexisted the surrender of sovereignty* and are not inconsistent with the laws of the United States or with the government use for which the property was acquired.") (emphasis added); *Mersnick v. USProtect Corp.*, No. C-06-03993 RMW, 2006 WL 3734396, at *6 (N.D. Cal. Dec. 18, 2006) ("[S]tate laws *existing at the time the United States accepts jurisdiction* remain enforceable unless 'abrogated' by federal law.") (emphasis added). Therefore, California Labor Code § 226, which took effect before the United States accepted exclusive jurisdiction over KCNP, remains enforceable in KCNP under the federal enclave doctrine.

1    Finally, defendant Kings Canyon relies on the decisions in *Mersnick*, 2006 WL 3734396,

2    at *8, and *Jackson v. Mission Essential Pers., LLC*, No. CV 11-1444-R, 2012 WL 13015000, at

3    *3 (C.D. Cal. Apr. 13, 2012), to argue that plaintiff's claims under California Labor Code §§

4    201–203, plaintiff's Fifth Cause of Action, are preempted under the federal enclave doctrine

5    because they are inconsistent with the Fair Labor Standards Act ("FLSA").  (Doc. No. 17-1 at

6    15.)  California Labor Code §§ 201–203 regulate the payment of final wages at the time of an

7    employee's discharge or resignation and imposes a penalty on employers who refuse to comply.

8    The district court in *Mersnick* simply recited § 551.101 of the FLSA (which provides "minimum

9    standards for both wages and overtime entitlements, and administrative procedures by which

10   covered worktime must be compensated"), noted that the law lacked penalties for failures to pay

11   final wages, and concluded that §§ 201–203 conflicted with the FLSA.  2006 WL 3734396, at *8.

12   The district court in *Jackson* then relied on the decision in *Mersnick* to summarily decide that §§

13   201–203 claims "are precluded because they are in conflict" with FLSA.  2012 WL 13015000, at

14   *3.

15       This court declines to adopt the reasoning of the courts in *Mersnick* and *Jackson* in

16   resolving this issue.  As plaintiff notes, the fact that the FLSA is *silent* on the payment of final

17   wages and penalties for employers who fail to pay them does not mean it is *inconsistent* with §§

18   201–203.  (Doc. No. 20 at 21.)   As the Ninth Circuit has pointed out:

19           No statutory language [in the FLSA] expressly preempts the
             appellant's [state law] claims. . . .  The statute contains a "savings
20           clause" that allows states and municipalities to enact stricter wage
             and hour laws. . . .  [T]he FLSA's "savings clause" is evidence that
21           Congress did not intend to preempt the entire field. . . .  While the
             FLSA may be a comprehensive remedy, as the district court argues,
22           the "savings clause" indicates that it does not provide an exclusive
             remedy.
23

24   *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1151 (9th Cir. 2000) (citations omitted)

25   (under the FLSA, "[t]here is definitely no express or field preemption"); *see* 19 U.S.C. § 218

26   ("No provision [of the FLSA] shall excuse noncompliance with any Federal or State law or

27   municipal ordinance establishing" a higher minimum wage, lower maximum work week, or

28   stricter child labor standards, nor shall it "justify any employer in reducing a wage paid by him

9

which in excess of the applicable minimum wage . . . [or] increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter"); *see also Gonzalez v. CoreCivic of Tennessee, LLC*, No. 1:16-cv-01891-DAD-JLT, 2018 WL 4388425, at \*5 (E.D. Cal. Sept. 13, 2018) (noting that "[d]istrict courts in the Ninth Circuit . . . [have concluded] the FLSA does not pre-empt state law wage claims and that a plaintiff may recover damages under each statute separately") (collecting cases). To construe the FLSA as preempting stricter state wage laws would be inconsistent with the FLSA's plain language and Ninth Circuit precedent.

In summary, plaintiff's Second, Ninth, and Tenth Causes of Action will be dismissed with prejudice as to defendant Kings Canyon, and to the extent plaintiff's other claims against Kings Canyon are predicated on IWC Wage Order No. 5-2001, they will also be dismissed with prejudice. Plaintiff's First, Third, Fourth, Fifth, Sixth, and Seventh Causes of Action will be addressed later in this order.

2.      Asilomar Ceased Operations Before the Relevant Period in the Complaint

Defendant Asilomar argues that plaintiff cannot state a claim against it because it ceased operations in September 2009, before the relevant class period and before plaintiff was hired. (Doc. No. 17-1 at 17.) Plaintiff agreed in his opposition and at the hearing on the pending motion that he could not state a claim against Asilomar. (Doc. No. 20 at 23.) Accordingly, defendant Asilomar will be dismissed from this action with prejudice.

3.      Failure to Allege Sufficient Facts to State a Claim for Relief

Before addressing defendants' argument that plaintiff has failed to state a claim in further detail, the court notes that plaintiff has declined to defend the operative complaint. Plaintiff instead opposes defendants' motion for judgment on the pleadings by referencing his Proposed First Amended Complaint ("PFAC"). (*See* Doc. No. 20.) Because the PFAC is not an operative pleading, the court will not consider it in resolving this pending motion for judgment on the pleadings. *See Johnson v. Dodson Pub. Sch., Dist. No. 2-A(C)*, 463 F. Supp. 2d 1151, 1156 (D. Mont. 2006) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co. Inc.,* 896 F.2d 1542, 1550

/////

(9th Cir. 1990) ("[A] motion for judgment on the pleadings is limited to matters presented in the pleadings.").

>    a.    *Plaintiff Fails to Sufficiently Plead His Employment by Defendants*

In his complaint plaintiff alleges that he is "a former [non-exempt] employee of DEFENDANTS." (Compl. at ¶ 3–4). But as defendants point out (Doc. No. 17-1 at 17), plaintiff fails to plead any specific facts about his employment—he does not allege his job title, his job description or duties, the dates of his employment, the physical location(s) where he worked, or the specific defendant(s) for which he worked. Plaintiff's complaint is bereft of "even the most basic facts regarding [his] employment" that would allow the court to draw a reasonable inference about "these allegations and thus move them beyond 'the line between possibility and plausibility[.]'" *Ovieda v. Sodexo Operations, LLC*, No. CV 12-1750-GHK SSX, 2012 WL 1627237, at *3 (C.D. Cal. May 7, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In opposition to the pending motion, plaintiff only points to his PFAC, thus failing to defend the operative complaint. (Doc. No. 20 at 23.) The court must conclude that plaintiff's complaint is insufficiently plead with respect to his alleged employment by defendants; it will therefore be dismissed with leave to amend.

>    b.    *Plaintiff Fails to Sufficiently Plead He Was Jointly Employed by*
>           *Defendants*

Plaintiff alleges, on information and belief, that all seven defendants "were the joint employers of PLAINTIFF and CLASS MEMBERS . . . [and] were the alter egos, divisions, affiliates, integrated enterprises, joint employers, subsidiaries, parents, principals, related entities, co-conspirators, authorized agents, partners, joint ventures, and/or guarantors, actual or ostensible, of each other" and that "[e]ach DEFENDANT was completely dominated by his, her, or its co-DEFENDANT, and each was the alter ego of the other." (Compl. at ¶ 14). Defendants argue that plaintiff's complaint "provides no factual predicate for these allegations." (Doc. No. 17-1 at 18.)

Under California law, whether entities are joint employers of an employee is determined by a factual inquiry into the "totality of the working relationship of the parties," weighing factors

such as the extent to which defendants control the employee's duties. *Tavares v. Cargill Inc.*, No. 1:18-cv-00792-DAD-SKO, 2019 WL 2918061, at *11 (E.D. Cal. July 8, 2019). To make a plausible joint employer claim, plaintiff must allege some specific facts such as whether "defendant pays the employee's salary and taxes, owns the equipment necessary for the employee to perform his job, has authority to hire, train, fire, or discipline the employee, or has discretion to set the employee's salary." *Ontiveros v. Zamora*, No. CIV.S-08-567-LKK-DAD, 2009 WL 425962, at *6 (E.D. Cal. Feb. 20, 2009).

Here, plaintiff's complaint falls far short of meeting these standards. Other than the conclusory allegation that all seven defendants are his joint employer, plaintiff alleges no supporting facts. The court is not required to accept as true "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1056–57 (9th Cir. 2008); *compare U.S. E.E.O.C. v. Am. Laser Centers LLC*, No. 1:09-cv-2247-AWI-DLB, 2010 WL 3220316, at *5 (E.D. Cal. Aug. 13, 2010) (dismissing joint employer claims because the plaintiff failed to explain how the "[d]efendant companies are related to each other") *and Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040–1041 (N.D. Cal. 2014) (dismissing joint employer and alter ego claims because the plaintiff's "alter ego allegations are too conclusory to survive a motion to dismiss" and because plaintiff did not allege facts showing defendants acted as joint employers) *with Tavares,* 2019 WL 2918061, at *11, n.6 (finding that plaintiff's allegations about two defendants that "share a close relationship with one another" were sufficient to state a joint employer claim because they included specific allegations about defendants' control over plaintiff's employment) *and Ontiveros*, 2009 WL 425962, at *6 (finding that the plaintiff alleged enough facts to state a joint employer claim in a case where the defendant was alleged to have "set up an elaborate scheme of corporations [where] all of the employees are managed and employed as thought it were one business operated by "defendant").

For the above reasons, the court concludes that plaintiff's joint employer claims are insufficiently pled. Accordingly, they will be dismissed with leave to amend.

/////

/////

12

1                *c.*     *First through Tenth Causes of Action*

2         Plaintiff asserts the following eight causes of action:  (1) failure to provide required meal

3   periods, (2) failure to provide required rest periods, (3) failure to pay overtime wages, (4) failure

4   to pay minimum wages, (5) failure to pay all wages due to discharged and quitting employees, (6)

5   failure to maintain required records, (7) failure to furnish accurate itemized wage statements, and

6   (8) failure to indemnify employees for necessary expenditures incurred in discharge of duties.

7   (Compl. at ¶¶ 19–54.)  Two other causes of action are derivative of those identified above:  (9)

8   the unfair competition claim, and (10) the PAGA claim.  (*Id.* at ¶¶ 55–65.)  The court addresses

9   defendants' arguments against each cause of action below.

10                  i.     First and Second Causes of Action

11        Plaintiff alleges in his first cause of action that defendants required him "to take less than

12  the 30-minute meal period, or to work through them, and have failed to otherwise provide the

13  required meal periods."  (Compl. at ¶ 20.)  He also alleges that defendants failed to compensate

14  him when he was "not provided with a meal period" or "worked during [his] meal periods."  (*Id.*

15  at ¶ 21–22.)  Plaintiff makes similar allegations as to rest periods in his second cause of action.

16  (*Id.* at ¶ 25–26.)

17        However, plaintiff's allegations in this regard "are simply a formulaic recitation of the

18  language used in California statutes and regulations.  Plaintiff's claims are not supported by any

19  allegations of fact—such as when, how, and which individuals were denied meal and rest

20  periods—that would plausibly indicate defendants are liable."  *Tavares,* 2019 WL 2918061, at *5.

21  Plaintiff does not argue otherwise but instead mere refers the court to the allegations of the

22  inoperative PFAC.  Accordingly, plaintiff's first and second causes of action will be dismissed

23  with leave to amend.

24                 ii.     Third and Fourth Causes of Action

25        Plaintiff's third and fourth causes of action allege that defendants failed to pay minimum

26  and overtime wages, even as they were:

27                 [R]equiring, permitting, or suffering PLAINTIFF and CLASS
                   MEMBERS to work off the clock; requiring, permitting, or suffering

28                 PLAINTIFF and CLASS MEMBERS to work through meal and rest

breaks; illegally and inaccurately recording time during which PLAINTIFF and CLASS MEMBERS worked; failing to properly maintain PLAINTIFF's and CLASS MEMBERS' records; failing to provide accurate itemized wage statements to PLAINTIFF and CLASS MEMBERS for each pay period; and other methods to be discovered.

(Compl. at ¶ 30, 35.)

Defendants contend that the complaint only makes "factually devoid and conclusory allegations from which the Court cannot reasonably infer that any violations have occurred." (*Id.* at 22). Citing the decision in *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2018), defendants argue that a plaintiff asserting minimum wage and overtime claims must allege details "regarding a given workweek when [he] worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid minimum wages." Although "district courts in California have varied somewhat in their determination of precisely what allegations are sufficient to state such a claim," *Tavares*, 2019 WL 2918061, at *5 (collecting cases), "[h]ere, the factual allegations of . . . plaintiff's unpaid overtime [and minimum wage] claim[s] . . . provide nothing beyond 'an unadorned, the defendant-unlawfully-harmed-me accusation.'" *Id.* at *4 (quoting *Iqbal*, 556 U.S. at 678). For instance, plaintiff does not allege any facts "such as the typical work schedule or the approximate number of hours worked during any period" or "how, under what circumstances or when plaintiff was allegedly required to work off-the-clock, or what work [he] purportedly performed when required to do so," failing to meet even the "most liberal pleading standard." *Id.*

Therefore, plaintiff's third and fourth causes of action will also be dismissed with leave to amend.

### iii.      Fifth Cause of Action

California Labor Code §§ 201–203 regulates the payment of final wages upon the discharge or resignation of an employee. Specifically, § 201 covers employees terminated by their employers, while § 202 covers employees who resign voluntarily. Section 203 authorizes penalties for employers that fail to comply with §§ 201–203.

/////

14

Plaintiff's fifth cause of action is defective for two reasons. First, plaintiff alleges merely that "DEFENDANTS have willfully failed to pay accrued wages and other compensation to PLAINTIFF and CLASS MEMBERS in accordance with California Labor Code §§ 201 and 202," (Compl. at ¶ 41), and then parrots "the language of the applicable statutory provisions and does not provide any supporting factual allegations." *Tavares*, 2019 WL 2918061, at *6. Second, plaintiff cannot seek relief under both §§ 201 and 202, as plaintiff could not have both resigned and been terminated at the same time. In any event, plaintiff has not even alleged in his complaint that he resigned or was terminated.

For the above reasons, plaintiff's fifth cause of action will be dismissed with leave to amend.

### iv. Sixth Cause of Action

California Labor Code § 1174 requires employers to keep payroll records for inspection by the California Labor Commission. According to defendant, "courts have routinely dismissed Section 1174 claims because it does not provide a private right of action." (Doc. No. 17-1 at 27.) Plaintiff responds to this argument by citing to the decision in *Carrillo v. Schneider Logistics, Inc.*, 823 F. Supp. 2d 1040, 1042 (C.D. Cal. 2011), where the court granted plaintiff's request for a temporary restraining order ("TRO") requiring defendants "to come into compliance with federal and state recordkeeping and disclosure requirements," as precedent establishing a private right of action under § 1174. However, when the court in *Carrillo* granted plaintiff's request for a TRO, it did not explicitly or implicitly recognize that a private right of action existed under § 1174. Moreover, the TRO could have been granted on the basis of the § 1174-derived PAGA claims at issue in that case. *Carrillo*, No. 2:11-cv-08557-CAS-DTB, (Doc. No. 44 at ¶ 196); *see also Lopez v. Wendy's Int'l, Inc.*, No. CV11-00275 MMM JCx, 2012 WL 13014600, at *8 & n.50 (C.D. Cal. June 14, 2012) ("Some courts have assumed without comment that § 1174 provides a private right of action.") (citing *Carrillo*, 823 F. Supp. 2d at 1044-45).

Reading the decision in *Carrillo* together with the substantial case law holding that § 1174 does not create a private right of action, this court concludes that plaintiff's § 1174 claim must be dismissed with prejudice. *See, e.g., Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924,

958 (N.D. Cal. 2016) ("Private rights of action for civil penalties under the Labor Code generally arise under the California Private Attorney General Act, not under the Labor Code directly."); *Suarez v. Bank of Am. Corp.*, No. 18-cv-01202-MEJ, 2018 WL 2431473, at *10 (N.D. Cal. May 30, 2018) (same and collecting cases); *Dawson v. HITCO Carbon Composites, Inc.*, No. CV16-7337 PSG FFMX, 2017 WL 7806618, at *7 (C.D. Cal. Jan. 20, 2017) (same).

Finally, plaintiff argues that even if there is no private right of action under § 1174, he can still rely upon § 1174 to proceed under his UCL and/or PAGA claims. The court will address those claims later in this order.

v.       Seventh Cause of Action

California Labor Code § 226 requires employers to provide itemized wage statements to employees; a "knowing and intentional failure" to comply can result in statutory penalties. "To recover damages under this provision, an employee must suffer injury as a result of a knowing and intentional failure by an employer to comply with the statute. This injury requirement, however, cannot be satisfied simply because one of the nine itemized requirements . . . is missing from a wage statement." *Tavares*, 2019 WL 2918061, at *6 (citations and internal quotations omitted).

Plaintiff alleges that defendants "knowingly and intentionally failed to provide" plaintiff "with timely, accurate, and itemized wage statements in writing showing each employee's gross wages earned, total hours worked, all deductions made, net wages earned, the name and address of the legal entity or entities employing PLAINTIFF and CLASS MEMBERS, and all applicable hourly rates in effect during pay period and the corresponding number of hours worked at each hourly rate . . .." (Compl. at ¶ 48–49.)

Defendant argues that plaintiff's claim brought under § 226 is defective because it fails to identify "**how** Defendant's statements were inaccurate." (Doc. No. 17-1 at 29 (emphasis in original)). The court agrees. In his complaint plaintiff simply recites the language of California's statutes, *Tavares,* 2019 WL 2918061, at *5, without identifying "a single deficient wage statement," *Franke v. Anderson Merchandisers LLC*, No. CV 17–3241 DSF (AFMx), 2017 WL 3224656, at *7 (C.D. Cal. July 28, 2017), or explaining how his wage statements are inaccurate.

*Robles v. Schneider Nat'l Carriers*, Inc., No. EDCV 16-2482-JGB(KKx), 2017 WL 8231051, at *7 (C.D. Cal. Feb. 10, 2017) ("Plaintiff does not provide any clarifying information that would explain *how* Defendant's statements were inaccurate.  For example, if Plaintiff alleges that the statements did not accurately recite the number of hours worked, in what way does he allege that the statements under-counted his hours?  Does he allege that he worked additional hours that Defendant never recognized?  That Defendant listed him as having worked a set number of hours per load delivery, regardless of how many hours he actually worked?").

Here, plaintiff once again fails to defend his operative complaint and instead merely refers to his inoperative PFAC.  Accordingly, plaintiff's § 226 claim will be dismissed with leave to amend.

vi.       Eighth Cause of Action

California Labor Code § 2802 requires employers to indemnify employees for necessary expenditures or losses incurred as a result of their job performance.  Plaintiff alleges that defendants "knowingly and willing failed to indemnify PLAINTIFF and CLASS MEMBERS for all business expenses and/or losses incurred . . . including but not limited to expenses for cell phone usage and other employment-related expenses . . . ."  (Compl. at ¶ 53.)

Defendant argues that plaintiff has not alleged that "he himself was charged for specific-business related expenses, or that his job duties required him to use a cell phone, nor does he allege that any putative class member incurred any such expense that not fully reimbursed."  (Doc. No. 17-1 at 30.)  Although plaintiff does identify that he was not reimbursed for cell phone usage, he does not allege facts in his complaint identifying a single specific cost that was not reimbursed or explain why cell usage was required for his job—or even, as noted above, what his job is.  Plaintiff's allegations "merely mirror the language of the statute without any supporting factual allegations."  *Tavares*, 2019 WL 2918061, at *7 (dismissing a § 2802 claim because plaintiff only included general allegations that she was not reimbursed for uniforms and equipment and failed to identify a "single specific cost incurred").

Again, plaintiff declines as to these allegations to defend his operative complaint.  Accordingly, plaintiff's eighth cause of action will be dismissed with leave to amend.

vii.     Ninth Cause of Action

California's Unfair Competition Laws ("UCL") prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Under the "unlawful" prong of the UCL, "section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). Where a plaintiff cannot state a claim under the "borrowed" law, they cannot state a UCL claim either. *See, e.g., Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) ("A court may not allow plaintiff to 'plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition.'" (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999))); *Pellerin v. Honeywell Int'l, Inc*., 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) ("A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim."); *Tavares*, 2019 WL 2918061, at *8 (same).

Here, both parties agree that plaintiff's UCL claim is entirely derivative of his first eight claims. (Doc. Nos. 17-1 at 30; 20 at 34.) Because plaintiff's claims are barred by the federal enclave doctrine, are insufficiently plead, or lack a private right of action, plaintiff's UCL claim necessarily fails. Therefore, plaintiff's ninth cause of action will also be dismissed with leave to amend.

viii.     Tenth Cause of Action

PAGA allows employees to stand in the shoes of the California Labor and Workforce Development Agency ("LWDA") and recover civil penalties for labor code violations "on behalf of himself or herself and other current or former employees." Cal. Labor Code § 2699(a).

Here, plaintiff's PAGA claim is wholly derivative of his first eight claims. (Doc. No. 17-1 at 30; 20 at 34.) Because most of plaintiff's claims must be dismissed, plaintiff "cannot assert PAGA . . . claims on those bases." *Sinohui v. CEC Entm't, Inc.*, No. EDCV 14-2516-JLS (KKx), 2015 WL 11072128, at *3 (C.D. Cal. Mar. 25, 2015); *see also Sanders v. Old Dominion Freight*

*Line, Inc*., No. EDCV 18-688 DSF (SHKx), 2018 WL 6321628, at * 4 (C.D. Cal. June 25, 2018) ("Plaintiffs' PAGA claim rises or falls with their other claims, and therefore is DISMISSED [.]"); *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011) (Because the underlying causes of action fail, the derivative . . . PAGA claim[ ] also fail[s].").

With respect to plaintiff's § 1174-derived PAGA claim, plaintiff has, in any event, failed to specifically identify any deficient or missing records in his complaint and does not argue otherwise. Therefore, Plaintiff's tenth cause of action will be dismissed to the extent it is reliant on defective claims with leave to amend.

### d.    Plaintiff Lacks Standing for Injunctive Relief

Plaintiff also seeks injunctive relief. (*See* Compl. at ¶ 23.) Defendants argue that plaintiff lacks standing to seek injunctive relief because he is no longer employed by defendants and has not alleged his intention to return to work there. (Doc. No. 17-1 at 31-32.)

To establish standing under Article III, it must be shown: (1) the plaintiff suffered an injury in fact; (2) the injury in fact was concrete and particularized; and (3) the injury was actual or imminent rather than conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Walsh v. New Dep't Human Res*., 471 F.3d 1033, 1036-37 (9th Cir. 2006). The "injury in fact" prong requires a threatened future injury to be real and immediate. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, (1983). Absent an indication of a desire to return to work for a former employer, a former employee lacks standing to seek such injunctive relief. *See Walsh*, 471 F.3d at 1037 (concluding that the plaintiff, a former employee who made no indication of any interest in returning to work for defendant, "would not stand to benefit from an injunction . . . at her former place of work"); *see also Bayer v. Neiman Marcus Group, Inc*., 861 F.3d 853, 865 (9th Cir. 2017) ("[A] former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief.").

Therefore, as a former employee with no declared intention to return to work for defendants, plaintiff has not shown a likelihood of future injury that is real and immediate.
/////

Moreover, plaintiff does not dispute this.  (Doc. No. 20 at 36.)  Accordingly, plaintiff's request for injunctive relief will be dismissed with prejudice.

### e.    Plaintiff's Class Allegations Are Insufficiently Pled

Defendants argue as follows:

> Plaintiff's Complaint fails to allege any written or oral class-wide policy or practice that resulted in any of the legal violations alleged, much less any basis on which to conclude that Plaintiff's experiences were typical of any other putative class member or that common questions would predominate in this litigation.   Plaintiff merely alleges in conclusory fashion that his claims are "typical" of the class because Defendants allegedly "subjected all non-exempt employees to identical violations of the Labor Code [and] the applicable IWC wage order." (Compl. at ¶ 14(c)).

(Doc. No. 17-1 at 32.)  Defendants also point out that plaintiff's counsel has been "chastised" for doing this same thing before.  (*Id.*) (citing *Ovieda*, 2012 WL 162737, at *4; *Ortiz v. Sodexho Operations, LLC*, No. CV-10-04158 R (RCX), 2010 WL 11552888 (C.D. Cal. Aug. 12, 2010); *Lopez*, 2012 WL 13014600, at *5; and *Luna v. Universal City Studios Prods. LLLP*, No. CV 12-9286 PSG (SSX), 2013 WL 12308201, at *1 (C.D. Cal. Mar. 29, 2013)).

Plaintiff's complaint in this case similarly fails to include a sufficiently plead class allegation.  As noted above, plaintiff does not allege his job title, his job description or duties, the dates of his employment, the physical location(s) where he worked, or the specific defendant(s) for which he worked.  Despite the barren allegations as to the circumstances of his own employment, plaintiff then purports to represent "other similarly situated current and former non-exempt employees of DEFENDANTS in the State of California at any time during the four years preceding the filing of this action . . . .." (Compl. at ¶ 4.)  Plaintiff also fails to allege any specific facts about defendants' purported class-wide "policies and practices," other than "bald legal assertions and conclusory allegations."  *Ortiz*, 2010 WL 11552888, at *1.  These deficiencies are further compounded by the fact that most of plaintiff's individual claims, which underlie his class allegations, are themselves insufficiently pled.

In response to defendant's arguments in this regard, plaintiff cites only to his inoperative PFAC.  His class allegations therefore necessarily fail and will be dismissed with leave to amend.

/////

**B.      Motion for Leave to File a First Amended Complaint**

Plaintiff has moved for leave to file his proposed first amended complaint.  (Doc. Nos. 27, 28-1.)  Although leave to amend under Rule 15 should be granted with "extreme liberality," *DCD Programs Ltd.*, 833 F.2d at 186, courts should consider whether factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, futility of the amendment" weigh against it.  *Foman*, 371 U.S. at 182.

Here, the futility of substantial aspects of the PFAC compels the court to deny plaintiff leave to file the PFAC.  As documented by defendants, plaintiff has already conceded that he is barred from bringing certain claims and cannot proceed against several of the currently named defendants.  (Doc. Nos. 20, 25.)  Yet, plaintiff has nevertheless included those claims and defendants in the PFAC.  (Doc. No. 28-1.)  Moreover, the PFAC is substantially similar to the operative complaint and, as such, fails to cure many of the defects that the court has identified above as grounds for dismissal of plaintiff's original complaint.

However, pursuant to Rule 15, the court will grant plaintiff leave to amend, subject to the direction provided and constraints noted in this order.[4]  In addition, plaintiff will be granted leave to amend to allege FLSA causes of action and to add Maria Socorro Vega as a plaintiff and proposed class representative.

/////

/////

---

[4]  In addition, plaintiff should heed Rule 11 of the Federal Rules of Civil Procedure, which provides that:

> By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (2) the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

**CONCLUSION**

For the reasons discussed above:

1.     Defendant's motion for judgment on the pleadings (Doc. No. 17) is, in the manner described above, granted;

2.     Plaintiff's motion for leave to file his proposed first amended complaint (Doc. Nos. 27, 28) is denied as futile;

3.     Plaintiff is nonetheless granted leave to amend in the manner described above; and

4.     Any amended complaint shall be filed within fourteen days from the date of service of this order.

IT IS SO ORDERED.

Dated:   **October 30, 2019**                    _____
                                          UNITED STATES DISTRICT JUDGE