UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PEREZ and MARIA SOCORRO VEGA, *individually and on behalf of others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>DNC PARKS & RESORTS AT SEQUOIA, *a California corporation*; *et al.*,<br><br>Defendants. | No. 1:19-cv-00484-DAD-SAB<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE AS MOOT<br><br>(Doc. Nos. 39, 40, 41) |

**INTRODUCTION**

This matter is before the court on the motions to dismiss and to strike filed by defendants. (Doc. Nos. 39, 40.) Defendants consist of DNC Parks & Resorts at Sequoia, Inc. ("DNC Sequoia"), DNC Parks & Resorts at Yosemite, Inc. ("DNC Yosemite"), Delaware North Companies, Inc. ("DNC Inc."), DNC Parks & Resorts at Kings Canyon, Inc. ("DNC Kings Canyon"), DNC Parks & Resorts at Tenaya, Inc. ("DNC Tenaya"), and Delaware North Companies Parks & Resorts, Inc. ("DNC Parks") (collectively, "defendants"). The court deemed the matter suitable for decision on the papers pursuant to Local Rule 230(g). (Doc. No. 48.) For the reasons set forth below, the court will grant in part defendants' motion to dismiss and deny their motion to strike as moot.

1

## BACKGROUND

Plaintiff David Perez initiated this putative class action in Tulare County Superior Court on February 28, 2019. (Doc. No. 1.) Defendants removed the action to this federal court on April 12, 2019, and then moved for judgment on the pleadings on August 19, 2019. (Doc. Nos. 1, 17.) On October 31, 2019, the court granted defendants' motion, dismissed plaintiff's complaint, and rejected plaintiff's proposed amended complaint, finding it to be fatally defective. (Doc. No. 36; *see* Doc. No. 28.) However, the court granted plaintiff limited leave to amend to (1) file a new amended complaint to cure the deficiencies identified by the court, (2) add Maria Socorro Vega as a plaintiff, and (3) add claims under the federal Fair Labor Standards Act ("FLSA"). (Doc. No. 36 at 21–22.)

Plaintiffs Perez and Vega subsequently filed their First Amended Complaint ("FAC") on November 14, 2019, in which they allege various labor law claims under California's Labor Code, Unfair Competition Law ("UCL"), and Private Attorneys General Act ("PAGA"), as well as the FLSA. (*See* Doc. No. 38, FAC.) On November 27, 2019, defendants moved to dismiss and to strike plaintiffs' FAC. (Doc. Nos. 39, 40.) Plaintiffs filed their oppositions to the motions on January 8, 2020, and defendants replied on January 15, 2020. (Doc. Nos. 44, 45, 46, 47.)

## REQUEST FOR JUDICIAL NOTICE

Defendants request that the court take judicial notice of the following documents: (1) the Joint Rule 26(f) Report filed in this matter; (2) the Declaration of Derek Zwickey in Support of Defendants' Notice of Removal, which was filed in this action; and (3) the Charge of Discrimination form filed by plaintiff Vega with the California Department of Fair Employment and Housing ("DFEH"). (Doc. No. 41.)

Although courts generally cannot consider material beyond the complaint in ruling on a Rule 12(b)(6) motion, a court may take "judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (internal quotation marks omitted). Federal Rule of Evidence 201 specifies that a court can take judicial notice of an adjudicative fact if that fact "is not subject to reasonable

dispute" because it either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). For this reason, courts should not take judicial notice of a fact contained within a document if that fact "is subject to varying interpretations, and there is reasonable dispute as to what [the document] establishes." *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011).

First, the court declines to take judicial notice of the Joint Rule 26(f) Report. The report is already a part of the record in this case, and, if appropriate, the court will consider the record in ruling on the pending motions. *See Diaz v. Macy's W. Stores, Inc.*, No. 8:19-cv-00303-ODW (MAAx), 2019 WL 6682383, at *2 (C.D. Cal. Dec. 6, 2019). However, defendants seek to rely on the report to show that plaintiff Perez was employed only by DNC Kings Canyon and not by the other defendants named in this action. (Doc. No. 39 at 13.) But discovery responses—even party admissions—are inherently subject to reasonable dispute and do not come from "sources whose accuracy cannot reasonably be questioned." *Germuhendislik Taahüt Proje v. Mems Precision Tech., Inc.*, No. 2:13-cv-05019-PSG-PJW, 2014 WL 12696767, at *3 (C.D. Cal. May 13, 2014) (quoting Fed. R. Evid. 201(b)(2)). The Joint Rule 26(f) Report in this case is thus not properly subject to judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (explaining that only "indisputable" facts are subject to judicial notice).

For the same reason, the court declines to take judicial notice of the Zwickey Declaration. The declaration of the Chief Operating Officer of DNC Parks, is not a matter of public record free from reasonable dispute or otherwise properly subject to judicial notice.[1]

/////

---

[1] Defendants rely on the decision in *Garcia v. Wal-Mart Stores, Inc.*, No. 5:16-cv-01645-TJH-RAO, 2016 WL 6068104, * 2 (C.D. Cal. Oct. 14, 2016), as support for their proposition that this court should take notice of a declaration filed in support of removal. However, *Garcia* involved a motion to remand, where courts are expressly permitted to consider documents contained in the removal petition. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

3

Finally, the court takes judicial notice of the fact that plaintiff Vega filed a Charge of Discrimination form with the DFEH but not of the facts alleged therein. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (holding that judicial notice is appropriate for "*undisputed* matters of public record" but not for "*disputed* facts stated in public records").

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). However, the court need not accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988. Neither must the court "assume the truth of legal conclusions cast in the form of factual allegations." *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008) (citation omitted).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It is also inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not

4

been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## DISCUSSION

**A.     Motion to Dismiss**

Defendants move to dismiss each of plaintiffs' ten claims on various grounds. They also move to dismiss plaintiff's class allegations. The court addresses each of these arguments below.

   1.     Defendants' Employer Status

Defendants contend that plaintiff Vega failed to sufficiently plead her employment by defendants, pointing out that she did not "state her job title, job duties, shift schedule, hours of work, supervisor(s) or whether she was a full-time employee." (Doc. No. 39-1 at 15–16.) But Vega did allege that she has been employed as a housekeeping employee by defendants at their Tenaya Lodge location since 2017. (FAC at ¶ 4.) She has thus alleged her job function, her dates of employment, and the physical location where she works. The court can also infer from these allegations that Vega is employed by DNC Tenaya.[2] Accordingly, plaintiff Vega has adequately alleged the requisite details of her employment by DNC Tenaya. (*Cf.* Doc. No. 36 at 11 (dismissing in part because plaintiff had failed to allege "his job title, his job description or duties, the dates of his employment, the physical location(s) where he worked, or the specific defendant(s) for which he worked").)

For the same reason, plaintiff Perez has also sufficiently pled his employment by defendant DNC Kings Canyon. In the FAC, Perez alleges that he was employed as a housekeeper and dishwasher between September 2016 and November 2016 and again between May 2017 until October 2018 at facilities in Kings Canyon National Park, including at the John Muir Lodge and the Grant Grove Restaurant. (FAC at ¶ 3.) He has thus adequately alleged his job function, his dates of employment, and the physical locations where he worked. The court can also infer from those allegations that Perez was employed by DNC Kings Canyon. Plaintiff Perez has therefore

---

[2] Even if the court had taken judicial notice of the Charge of Discrimination form submitted by Vega, the court fails to see how a discrepancy as to her employment dates with DNC Tenaya would warrant dismissal of the FAC.

adequately alleged the required details of his employment by defendant DNC Kings Canyon.

        2. <u>Plaintiffs' Joint Employer Claims under California Law</u>

Defendants next argue that plaintiffs provide no "factual predicate" for their joint employer allegations. (Doc. No. 39-1 at 11.) To be liable as an employer—joint or otherwise—under California law, an entity must have had the ability to "(1) to exercise control over . . . wages, hours or working conditions, (2) to suffer or permit to work, or (3) to engage, thereby creating a common law employment relationship."[3] *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1233 (N.D. Cal. 2015) (internal quotation marks omitted) (citing *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010)); *see also Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 947 (N.D. Cal. 2019) (same). Thus, as this court noted in its previous order in this case, plaintiffs "must allege some specific facts such as whether 'defendant pays the employee's salary and taxes, owns the equipment necessary for the employee to perform his job, has authority to hire, train, fire, or discipline the employee, or has discretion to set the employee's salary.'" (Doc. No. 36 at 12 (quoting *Ontiveros v. Zamora*, No. 2:08-cv-00567-LKK-DAD, 2009 WL 425962, at *6 (E.D. Cal. Feb. 20, 2009)).)

However, here plaintiffs failed to do so. Instead, plaintiffs merely allege that defendants were their joint employers because certain combinations of defendants belong to the same corporate family, share the same headquarters location, and/or use the same policies and practices for their employees. (FAC at ¶ 14.) These allegations are disparate and indiscriminate in nature and fail to make out a joint employer claim. For example, plaintiffs appear to allege that they signed various forms belonging to either one of four different defendants and that the same general manager worked for both DNC Sequoia and DNC Kings Canyon. (*Id.*) But neither allegation supplies enough factual content to make out a joint employer claim for *all six defendants*. For instance, the claim that the same general manager worked for DNC Sequoia and

---

[3] The California Supreme Court has warned against "confounding federal and state labor law" and has directed courts to "give the IWC's wage orders independent effect in order to protect the commission's delegated authority to enforce the state's wage laws and, as appropriate, to provide greater protection to workers than federal law affords." *Martinez v. Combs*, 49 Cal. 4th 35, 68 (2010).

6

1  DNC Kings Canyon could, at most, provide limited support for the claim that those two
2  defendants were joint employers. The same applies to the various forms that were purportedly
3  shared in piecemeal fashion between some of the defendant entities.

4      Plaintiffs do allege that certain timekeeping and scheduling systems and California-
5  specific meal and rest break policies were common across all defendants. (*Id.*) Plaintiffs point to
6  the decision in *Villalpando v. Exel Direct Inc.*, No. 3:12-cv-04137-JCS, 2014 WL 1338297, at *5
7  (N.D. Cal. Mar. 28, 2014), arguing that the court there found that "a standardized set of policies
8  and procedures" was sufficient to make out a joint employer claim. However, that case involved
9  delivery drivers for a company that contracted its delivery services to several retail clients.
10 *Villalpando*, 2014 WL 1338297, at *1. The drivers sued both the delivery company and its retail
11 clients as joint employers, arguing not only that they used common policies but that each of the
12 retailers were directly served by the drivers. *Id.* at *5. This key factual allegation established a
13 direct connection between each of the retailers and the drivers, suggesting that the retailers had at
14 least some control over the drivers' employment conditions. Here, however, plaintiffs Perez and
15 Vega worked at two discrete locations, and their allegations make "no distinction among the . . .
16 defendants charged, [even] though geographic and temporal realities [make] plain that all of the
17 defendants could not have participated in every act complained of." *Villalpando*, 2014 WL
18 1338297, at *5 (quoting *Magluta v. Samples*, 256 F.3d 1282, 1282 (11th Cir. 2001)). At most,
19 plaintiffs have alleged facts establishing a direct connection only with DNC Inc., the entity that
20 allegedly maintains the shared payroll system and created the common meal and rest break
21 policies. (*See* FAC at ¶ 14.) DNC Inc. may share these resources with the other defendants, but
22 plaintiffs have failed to allege that they were controlled by or have a direct relationship with any
23 of the other defendants, all which appear to be removed from plaintiffs by at least one degree.

24     Moreover, merely providing payroll services and meal and rest break policies—let alone
25 sharing or distributing them—does not create a joint employer relationship. *See, e.g.*, *Aleksick v.*
26 *7–Eleven, Inc.*, 205 Cal. App. 4th 1176 (2012) ("Providing a payroll service to a franchisee's
27 employees does not in any manner create an indicia of control over labor relations sufficient to
28 demonstrate that the franchisor is a joint employer." (internal quotation marks and citations

7

omitted)); *Ochoa*, 133 F. Supp. 3d at 1233 ("California courts have . . . den[ied] employer liability for entities that may be able to influence the treatment of employees but lack the authority to directly control their wages, hours or conditions."). Rather, an entity only has an employer relationship "if it has retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of [its] employees." *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 497–98 (2014).

Plaintiff's joint employer claims are thus insufficiently pled under state law and will therefore be dismissed. Because the court gave specific instructions on how to cure these same deficiencies in its previous order and plaintiffs nevertheless failed to cure those deficiencies, the court concludes that granting further leave to amend with respect to any blanket joint employer claims against all six defendants would be futile and unduly prejudicial to defendants. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Further leave to amend will thus be strictly limited to the extent that plaintiffs can allege specific facts that (1) directly links plaintiff(s) to one or more of the defendants and (2) demonstrates that *each* one or more of the defendants exercised control over plaintiffs' employment.

3. <u>Plaintiffs' Joint Employer Claims under Federal Law</u>

Plaintiffs' joint employer claims under federal law fail for similar reasons. To determine whether a joint employer relationship exists under the FLSA, courts in the Ninth Circuit use a four-part "economic reality" test that evaluates whether an entity: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Lesnik*, 374 F. Supp. 3d at 942 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985)).

Here, plaintiffs present only a conclusory allegation as to the first *Bonnette* factor and advance no allegation whatsoever as to the third factor. (*See* FAC at ¶ 14.) The court, however, is not required to accept as true "merely conclusory, unwarranted deductions of fact, or

8

unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056–57 (9th Cir. 2008). As to the second factor, plaintiffs allege that defendants shared a common scheduling system and the same scheduling policies and practices, but they do not allege that all six defendants supervised and/or controlled their employees' work schedules or conditions of employment. (*See* FAC at ¶ 14.) Similarly, under the fourth factor, plaintiffs allege that defendants maintained their employees' timecards in a common electronic system, but they do not allege that all six defendants managed plaintiffs' individual timecards. Rather, plaintiffs merely allege that defendant DNC Inc. is the parent company of the other defendants, and that DNC Inc. created certain written policies and maintained certain back office functions for the other defendants. (*Id.*) Based on those allegations alone, plaintiffs impute a joint employer relationship between them and each of the six defendants. This theory fails for two independent reasons. First, imputing joint employer liability purely because of a parent-subsidiary relationship would violate the "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks omitted). Second, "a plaintiff seeking to hold multiple entities liable as joint employers must plead specific facts that explain how the defendants are related and how the conduct underlying the claims is attributable to *each defendant*." *Johnson v. Serenity Transportation, Inc.*, 141 F. Supp. 3d 974, 990 (N.D. Cal. 2015) (emphasis added). Here, plaintiffs' scattershot allegations against certain individual defendants[4] cannot sustain a joint employer claim against all six named defendants.

Taking the *Bonnette* factors and the totality of the circumstances together, the court concludes that plaintiffs have failed to allege plausible joint employer claims under the FLSA. Those claims will also be dismissed, and the granting of leave to amend will again be limited to the extent that plaintiffs can allege specific facts that (1) directly links plaintiff(s) to one or more

---

[4] For example, plaintiffs allege that they signed DNC Park's Alcohol Awareness Acknowledgment form and DNC Inc.'s Unemployment Supplemental Screening Form, and that plaintiff Perez signed various other forms and policies for DNC Sequoia and DNC Kings Canyon. (*See* FAC at ¶ 14.) Even if these allegations alone were enough to make out a joint employer claim—and they are not—plaintiffs fail to allege any facts suggesting a joint employer relationship with DNC Tenaya and DNC Yosemite.

9

of the defendants and (2) demonstrates that *each* one or more of the defendants exercised control over plaintiffs' employment.

### 4. Plaintiffs' Claims of Alter Ego Liability

As in their original complaint, plaintiffs allege in their FAC that, on information and belief, "[e]ach DEFENDANT was completely dominated by his, her, or its co-DEFENDANT, and each was the alter ego of the other." (FAC at ¶ 14.)

> Under the [alter ego] doctrine, [a] corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the [owner] of a corporation liable for the acts of the corporation. There is a strong presumption against disregarding corporate identities and finding a person to be the alter ego of a corporation. To overcome this presumption and state a claim for alter ego liability, a plaintiff must adequately allege that (1) there is such unity of interest that the separate personalities [of the entity and the shareholder] no longer exist and (2) that failure to disregard [their separate entities] would result in fraud or injustice. The party asserting alter ego liability bears the burden of establishing it. Conclusory allegations of alter ego status are inadequate; instead, the plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each.

*Serenity Transportation*, 141 F. Supp. 3d at 983–84 (internal quotation marks and citations omitted). Here, however, plaintiffs have alleged no facts that would support a theory of alter ego liability. Dismissal is therefore appropriate. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040–41 (N.D. Cal. 2014) (dismissing alter ego claims because they were "too conclusory to survive a motion to dismiss"). Once again, because plaintiffs were already given the opportunity to cure the deficiencies with this claim and failed to make any effort to do so, granting further leave to amend in this regard would be futile and prejudicial to defendants. *See Leadsinger*, 512 F.3d at 532. Accordingly, plaintiffs' alter ego claims will be dismissed without leave to amend.

### 5. Plaintiffs' First and Second Causes of Action for Failure to Provide Meal and Rest Breaks

California law requires an employer to provide its non-exempt employees with a thirty-minute meal period for every five hours of work. *See* Cal. Labor Code §§ 226.7, 512. To be a compliant meal break under California law, "an employer must relieve the employee of all duty for the designated period but need not ensure that the employee does no work." *Brinker Rest.*

*Corp. v. Superior Court*, 53 Cal. 4th 1004, 1034 (2012).  An employee in the housekeeping industry is likewise entitled to a ten-minute rest break for every four hours of work.  *See* 8 Cal Code Regs. § 11050, subd. 12.  During this period, "employees must not only be relieved of work duties, but also be freed from employer control over how they spend their time."  *See Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 270 (2016).  To successfully state a meal or rest break claim, plaintiffs must allege facts specifically identifying an instance where they were deprived of a meal or rest break.  *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014), *as amended* (Jan. 26, 2015); *see also Boyack v. Regis Corp.*, No. 19-55279, 2020 WL 2111464, at *2 (9th Cir. May 4, 2020) (holding that a rest break claim fell short of the *Landers*' requirements by not "demonstrating at least one workweek in which [the plaintiffs] were personally deprived of rest breaks").[5]

Plaintiffs allege in their FAC that:  (1) defendants failed to "schedule sufficient employees at their facilities to relieve their non-exempt employees to take their meal and rest breaks," (2) plaintiffs were not authorized or permitted the rest breaks to which they were entitled even though they "generally work[ed] at least eight (8) hours per day and occasionally over ten (10) hours per day," (3) "due to understaffing, no one [was] available to cover" plaintiffs to allow them to take their rest breaks, (4) plaintiffs regularly took less than their allotted meal and rest breaks because they had to spend a portion of their break walking to the area designed by defendants for breaks, (5) defendants forced plaintiffs to make or delay their meal breaks because "supervisors require[d] them to complete tasks they were working on before they [were permitted] to take a meal break," and (6) defendants at times "interrupted" plaintiffs' breaks "by asking them work-related questions."  (FAC at ¶¶ 18–22.)

These allegations are an improvement on those contained in the original complaint but are still not sufficient.  Although plaintiffs have pled additional facts that make it arguably more plausible that defendants' policies "resulted in late, interrupted, or missed meal and rest breaks," *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 941 (N.D. Cal. 2016), plaintiffs have still

---

[5] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

11

failed to identify any specific instance(s) where they were deprived of meal or rest breaks. *See Landers*, 771 F.3d at 646; *Boyack*, 2020 WL 2111464, at *2. District courts have consistently dismissed meal and rest break claims that lack such allegations.[6] *See, e.g.*, *Haralson*, 224 F. Supp. 3d at 941 ("Nowhere in the complaint does [the plaintiff] provide any factual information to suggest that he personally worked any shift that was long enough to trigger meal and rest break obligations."); *Wyland v. Berry Petroleum Co., LLC*, No. 1:18-cv-01414-DAD-JLT, 2019 WL 1047493, at *8 (E.D. Cal. Mar. 5, 2019) (same); *Partida v. Stater Bros. Markets*, No. 5:18-cv-02600-SJO-KKX, 2019 WL 1601387, at *8 (C.D. Cal. Feb. 19, 2019) (same); *Freeman v. Zillow, Inc.*, No. 8:14-cv-01843-JLS-DFM, 2015 WL 5179511, at *5 (C.D. Cal. Mar. 19, 2015) (same). However, the detail of the allegations made thus far suggest that plaintiffs may well be able to cure these deficiencies upon amendment. Plaintiffs' meal and rest break claims will therefore be dismissed with further leave to amend also being granted.

      6. <u>Plaintiffs' Third, Fourth, and Tenth Causes of Action for Failure to Pay Hourly and Overtime Wages under State Law and the FLSA</u>

California law requires employers to pay employees the minimum wage for all hours worked, *see* California Labor Code § 1197, and overtime pay for any work in excess of eight hours in one workday and forty hours in any workweek, *see id.* § 510. The FLSA provides similar guarantees. *See* 29 U.S.C. §§ 206, 207. To successfully state an hourly or overtime wage claim under the FLSA, a plaintiff must identify "at least one workweek when he worked in excess of forty hours and was not paid for the excess hours in that workweek, or was not paid minimum wages." *Landers*, 771 F.3d at 646. This pleading requirement has been extended by the Ninth Circuit to the equivalent state law claims. *See Boyack*, 2020 WL 2111464, at *1; *Boon v. Canon*

---

[6] There is some variation among district courts as to how strictly *Landers* should be applied. *See Tavares v. Cargill Inc.*, No. 1:18-cv-00792-DAD-SKO, 2019 WL 2918061, at *3 (E.D. Cal. July 8, 2019) (collecting cases). Some courts have applied a more stringent pleading standard, concluding that allegations of specific instances where a plaintiff merely felt "pressured" to not take meal and rest breaks were not enough. *See Guerrero v. Halliburton Energy Servs., Inc.*, 231 F. Supp. 3d 797, 805–06 (E.D. Cal. 2017). Other district courts have applied a less demanding pleading standard in concluding that allegations remarkably like the ones made here are sufficient. *See Varsam v. Lab. Corp. of Am.*, 120 F. Supp. 3d 1173, 1178–79 (S.D. Cal. 2015).

*Bus. Sols., Inc.*, 592 F. App'x 631, 632 (9th Cir. 2015).[7]  In addition, the Ninth Circuit has advised that:

> A plaintiff may establish a plausible [overtime wage] claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility.  Obviously, with the pleading of more specific facts, the closer the complaint moves toward plausibility.  However, like the other circuit courts that have ruled before us, we decline to make the approximation of overtime hours the *sine qua non* of plausibility for claims brought under the FLSA. After all, most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants.

*Landers*, 771 F.3d at 645 (citations omitted).

Here, plaintiffs allege that they were not paid all minimum wages and overtime hours because they:  (1) were interrupted during their breaks, (2) were paid for less than the overtime hours actually worked, (3) were not provided with premium payments for all meal and rest periods that defendants forced them to miss, (4) had their time records improperly adjusted to reflect meal breaks that were not actually taken, (5) were required to finish their allotted work even after clocking out for the day, and (6) did not have the value of certain fringe benefits factored into the calculation of their rate of pay for overtime hours.  (FAC at ¶¶ 23–25.)

However, plaintiffs have failed to identify a single workweek where they were not paid the minimum wage for hours worked or overtime pay for any hours worked in excess of eight hours in one workday and forty hours in any one workweek.  In addition, although plaintiff Vega alleges that she "often works 48 hours per week over 6 days, but . . . is only paid for 43 to 45 hours for those weeks," (*id.* at ¶¶ 9–10), she does not indicate what constitutes "often" and whether it even represents the "average workweek during the applicable period," *Landers*, 771 F.3d at 645.  Plaintiff Vega also does not provide the "average rate at which she was paid" or an estimate of the "amount of overtime wages she believes she is owed." *Id.*  Though plaintiffs are not "expected to allege 'with mathematical precision' the amount of overtime compensation owed

---

[7] Citation to these unpublished Ninth Circuit opinions is appropriate pursuant to Ninth Circuit Rule 36-3(b).

13

by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id.* at 646 (quoting *Dejesus v. HF Management Services, LLC*, 726 F.3d 85, 90 (2d Cir. 2013)). Absent the allegation of such facts, plaintiffs' minimum wage and overtime pay claims will therefore be dismissed with leave to amend.

       7.     <u>Plaintiffs' Fifth Cause of Action for Failure to Pay Final Wages</u>

California Labor Code §§ 201–03 regulate the payment of final wages upon the discharge or resignation of an employee. While § 201 covers employees terminated by their employers, § 202 covers employees who resign voluntarily. To enforce those provisions, § 203 authorizes waiting time penalties for employers that "willfully" fail to comply with §§ 201–02.

Here, plaintiffs merely parrot "the language of applicable statutory provisions" and fail "to provide any supporting factual allegations." (Doc. No. 36 at 15.) Their only allegations with even a degree of specificity do not mention whether plaintiff Perez resigned or was terminated. (*See* FAC at ¶ 26.) As the court stated in its previous order, "plaintiff cannot seek relief under both §§ 201 and 202, as plaintiff could not have both resigned and been terminated at the same time." (Doc. No. 36 at 15.) *See also Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1394 (2010). In addition, plaintiff Vega does not even appear to have standing to prosecute this claim because she alleges that she is still employed by defendants as a housekeeping employee. (FAC at ¶ 4.) *See Haralson*, 224 F. Supp. 3d at 943. Finally, plaintiffs allege no factual content to support their claim that defendants "willfully" failed to pay final wages. *See Porch v. Masterfoods, USA, Inc.*, 685 F. Supp. 2d 1058, 1075 (C.D. Cal. 2008) (explaining § 203's willfulness requirement), *aff'd*, 364 F. App'x 365 (9th Cir. 2010).

Accordingly, plaintiffs' claim that defendants failed to pay final wages will be dismissed. Because plaintiffs failed to cure any of this claim's deficiencies identified by the court in its previous order, (*see* Doc. No. 36 at 15), and instead even added a facially defective claim on behalf of plaintiff Vega, the court finds that allowing further amendment would be futile and unduly prejudicial to defendants. *See Leadsinger*, 512 F.3d at 532. Therefore, leave to amend with respect to this claim will be denied.

       8.     <u>Plaintiffs' Sixth Cause of Action for Failure to Provide Itemized Wage Statements</u>

California Labor Code § 226 requires employers to provide itemized wage statements to employees.

> To recover damages under this provision, an employee must suffer injury as a result of a knowing and intentional failure by an employer to comply with the statute. This injury requirement, however, cannot be satisfied simply because one of the nine itemized requirements . . . is missing from a wage statement.

*Tavares*, 2019 WL 2918061, at *6 (citing *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011)). In addition, an employee must also demonstrate that they suffered "*an injury* arising from the missing information." *Price*, 192 Cal. App. 4th at 1142–43.

In its previous order, the court instructed plaintiffs to identify *how* their wage statements were inaccurate. (Doc. No. 36 at 16–17.) But in their FAC, plaintiffs could only point to a single purported inaccuracy: the abbreviation of plaintiff Perez's employer's full name, DNC Parks & Resorts at Kings Canyon, Inc., as "DNC P&R at Kings Canyon, Inc." (FAC at ¶ 27.) However, courts have repeatedly found that "slightly truncating" an employer's name cannot sustain a claim under § 226. *See, e.g.*, *Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1179 (C.D. Cal. 2008), *aff'd*, 368 F. App'x 761 (9th Cir. 2010); *Noori v. Countrywide Payroll & HR Sols., Inc.*, 43 Cal. App. 5th 957, 964 (2019), *review denied* (Mar. 25, 2020). In any event, the court cannot take seriously any claim that plaintiff Perez could have been confused and injured by such a minor abbreviation of his employer's name.

In response, plaintiffs suggest that the court look to plaintiff Vega's allegations, since "it can be reasonably inferred [from her minimum wage and overtime claims] that Vega's wage statement was inaccurate because it stated hours less than the hours she actually worked and also stated inaccurate wages stemming from those hours." (Doc. No. 44 at 18.) But if Vega's wage statements were indeed inaccurate for those reasons, plaintiffs should have identified at least one noncompliant wage statement and pled just that. Plaintiffs failed to do so, and the court declines

/////

/////

/////

to adopt their proffered inference as one that should be drawn.[8] *See Sprewell*, 266 F.3d at 988 ("[T]he court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Accordingly, plaintiffs' § 226 claim will be dismissed. Because the paucity of detail in plaintiff Perez's amended claim, the court concludes that granting further leave to amend this claim would also be futile and prejudicial to defendants. *See Leadsinger*, 512 F.3d at 532. Accordingly, leave to amend Perez's claim in this regard will be denied and leave to amend will be granted only as to Vega's claim.

        9.     <u>Plaintiffs' Seventh Cause of Action for Failure to Reimburse Employees for Necessary Expenditures</u>

California law requires that employers reimburse employees for all reasonable and necessary expenditures incurred in discharging their job duties. Cal. Labor Code § 2802. Alternatively, "[w]hen uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term 'uniform' includes wearing apparel and accessories of distinctive design or color." 8 Cal Code Regs. § 11050, subd. 9.

Here, plaintiffs allege that they "were required to purchase black non-slip shoes and shirts to DEFENDANTS' specification, including particular colors and styles, for their work at the DEFENDANTS, but were not reimbursed for this expense, among other unreimbursed expenses." (FAC at ¶ 28.) This claim fails for several reasons. First is the obvious fact that nondescript black shoes and shirts are "basic wardrobe items," and that the defendants' purported uniform requirements are of a "very general nature." *Becerra v. RadioShack Corp.*, No. 4:11-cv-03586 YGR, 2012 WL 6115627, at *5 (N.D. Cal. Dec. 10, 2012). Such clothes fall into the exception to reimbursement under § 2802. *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, No. 2:17-cv-01063-KJM-CKD, 2017 WL 1354568, at *11 (E.D. Cal. Apr. 13, 2017) (applying the exception to "white shirts, dark pants and black shoes and belts, all of unspecified design"). Second,

---

[8] For example, barring the identification of at least one noncompliant wage statement, the court could also infer from Vega's allegations that she was underpaid for the hours she worked but that her wage statements nevertheless accurately stated what she should have been paid.

16

plaintiffs also fail to identify any of the "other unreimbursed expenses" that defendant allegedly required them to incur. (FAC at ¶ 28.) Because plaintiffs were already provided an opportunity to amend this cause of action, and could muster only the anemic allegations[9] that defendants failed to reimburse them for generic black shoes and shirts, the court concludes that granting further leave to amend would be futile and prejudicial to defendants. *See Leadsinger*, 512 F.3d at 532. Accordingly, plaintiffs' § 2802 claims will also be dismissed without leave to amend.

### 10. Plaintiffs' Eighth Cause of Action under California's Unfair Competition Law

California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Under the "unlawful" prong of the UCL, "section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). Where a plaintiff cannot state a claim under the "borrowed" law, they cannot state a UCL claim either, as such claims rise and fall together. *See Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1011 (N.D. Cal. 2016); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012).

In a perfunctory one-sentence opposition, plaintiffs implicitly concede that their UCL claim relies solely on the unlawful theory of liability. (Doc. No. 44 at 20.) But because their UCL claim is entirely derivative of their first seven claims, which are all being dismissed, plaintiffs' UCL claim must fail with them. Accordingly, plaintiff's UCL claim will be dismissed with leave to amend.

### 11. Plaintiffs' Ninth Cause of Action under PAGA

Plaintiffs' PAGA claim fails for the same reason explained above. PAGA allows employees to stand in the shoes of the government and recover civil penalties for labor code

---

[9] In addition, plaintiffs barely defended this claim, only offering a cursory and insubstantial one-sentence opposition to defendants' arguments to dismiss. (Doc. No. 44 at 19–20.) In similar circumstances, courts have held that "[s]uch a failure in an opposition brief constitutes abandonment of the claim." *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) (collecting cases).

violations "on behalf of himself or herself and other current or former employees." Cal. Labor Code § 2699(a). But like the UCL, a PAGA claim "rises or falls" with its underlying causes of action. *Price*, 192 Cal. App. 4th at 1147. Because none of plaintiffs' underlying claims will remain, their PAGA claim will also be dismissed with leave to amend.

### 12. Plaintiffs' Class Allegations

Finally, defendants move to dismiss plaintiff's class allegations under Rule 23. (Doc. No 39-1 at 33.) However, "compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim." *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969). Rather, it is typically "premature to assess compliance with Rule 23 at this early stage where the defendant has yet to file an answer and discovery has not yet begun." *Haralson*, 224 F. Supp. 3d at 943. Moreover, each of plaintiffs' substantive causes of action will be dismissed by this order for failure to allege sufficient facts to state a claim. Accordingly, defendants' motion to dismiss plaintiffs' class claims will be denied as moot. *See Luna v. Universal City Studios Prods. LLLP*, No. 2:12-cv-09286-PSG-SS, 2013 WL 12308201, at *10 (C.D. Cal. Mar. 29, 2013).

**B.     Motion to Strike**

Because all of plaintiffs' causes of action will be dismissed, the court will deny defendants' motion to strike as having been rendered moot by this order.[10]

/////

/////

---

[10] The court again cautions plaintiffs to heed Rule 11 of the Federal Rules of Civil Procedure:

> By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (2) the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Although the court need not now reach the merits of the arguments presented by defendants in their motion to strike, the court will not turn a blind eye to claims brought baselessly if it later comes to light that such allegations were facially untenable given the evidence already available to the parties.

18

**CONCLUSION**

Accordingly:

1. Defendants' motion to dismiss (Doc. No. 39) is granted in part as detailed above;

2. Defendants' motion to strike (Doc. No. 40) is denied as having been rendered moot by this order; and

3. Any amended complaint plaintiffs elect to file, as limited above, shall be filed within fourteen (14) days of service of this order.

IT IS SO ORDERED.

Dated: **July 29, 2020**

_Dale A. Drozd_
UNITED STATES DISTRICT JUDGE