1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID PEREZ,                              No.  1:19-cv-00484-DAD-SAB

12                  Plaintiff,

13         v.                                  ORDER GRANTING IN PART
                                               DEFENDANTS' MOTION TO
14   DNC PARKS & RESORTS AT                    DISMISS AND DENYING
     ASILOMAR, INC., et al.                    DEFENDANTS' MOTION TO STRIKE
15
                 Defendants.                   (Doc. Nos. 54, 55)
16

17

18         Before the court are motions to dismiss and to strike filed on behalf of defendants DNC

19   Parks & Resorts at Asilomar, Inc. ("Asilomar"), DNC Parks & Resorts at Sequoia, Inc.

20   ("Sequoia"), DNC Parks & Resorts at Yosemite, Inc. ("Yosemite"), Delaware North Companies,

21   Inc. ("Delaware North"), DNC Parks & Resorts at Kings Canyon, Inc. ("Kings Canyon"), DNC

22   Parks & Resorts at Tenaya Inc. ("Tenaya"), and Delaware North Companies Parks & Resorts,

23   Inc. ("Parks & Resorts") (collectively, "defendants") on August 26, 2020.[1]  (Doc. Nos. 54, 55.)

24   Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-

25   19 pandemic and the outbreak of the virus within this district, defendants' motions were taken

26   _____

27   [1]  In their pending motion to dismiss, the defendants explained their corporate structure as
     follows:  Defendants Sequoia, Yosemite, Kings Canyon, and Tenaya are wholly-owned
28   subsidiaries of Parks & Resorts, which is the wholly-owned subsidiary of Delaware North.  (Doc.
     No. 54-1 at 13.)

                                                   1

1    under submission on the papers.  (Doc. No. 56.)  For the reasons set forth below, the court will

2    grant in part defendants' motion to dismiss and deny their motion to strike.[2]

3                                    **BACKGROUND**

4            This matter arises from plaintiff David Perez's putative class action lawsuit alleging

5    various wage-and-hour violations by defendants.  The case was originally filed by plaintiff in

6    Tulare County Superior Court, but defendants removed the action to this federal court on April

7    12, 2019.  (Doc. No. 1.)  On October 30, 2019, the court granted defendants' motion for judgment

8    on the pleadings and dismissed plaintiff's complaint, but granted plaintiff leave to amend to:  (i)

9    file a first amended complaint addressing the deficiencies identified by the court; (ii) add Maria

10   Socorro Vega as a plaintiff; and (iii) add claims under the Fair Labor Standards Act ("FLSA").

11   (Doc. No. 36 at 21–22.)[3]  In granting leave amend, the court cautioned plaintiff to heed Rule 11

12   of the Federal Rules of Civil Procedure.  (*Id.* at 21 n.4.)

13           On November 14, 2019, plaintiffs Perez and Vega[4] filed their first amended complaint

14   ("FAC"), which defendants moved to dismiss and strike.  (Doc. Nos. 38, 39, 40.)  On July 29,

15   2020, the court granted defendants' motion to dismiss in part and denied their motion to strike as

16   moot.  (Doc. No. 51.)  The court dismissed several claims asserted by plaintiffs without leave to

---

17   [2]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's

18   overwhelming caseload has been well publicized and the long-standing lack of judicial resources
     in this district long-ago reached crisis proportion.  That situation has now been partially addressed

19   by the U.S. Senate's confirmation of a new district judge for this court on December 17, 2021.
     Nonetheless, for over twenty-two months the undersigned was left presiding over approximately

20   1,300 civil cases and criminal matters involving 735 defendants.  Unfortunately, that situation
     sometimes results in the court not being able to issue orders in submitted civil matters within an

21   acceptable period of time.  This has been frustrating to the court, which fully realizes how
     incredibly frustrating it is to the parties and their counsel.

22

23   [3]  In its order dated October 30, 2019, the court also dismissed defendant Asilomar from this
     action with prejudice.  (Doc. No. 36 at 10.)  However, the docket was not updated to reflect that

24   defendant Asilomar had been terminated as a defendant in this action.  Accordingly, the court will
     direct the Clerk of the Court to update the docket to reflect that defendant Asilomar was

25   terminated as a named defendant on October 30, 2019.

26
     [4]  The court notes that at the time the first amended complaint was filed, the docket in this action

27   was not updated to reflect the addition of Maria Socorro Vega as a named plaintiff.  The court
     will also direct the Clerk of the Court to update the docket to reflect that plaintiff Vega was added

28   as a named plaintiff in this action on November 14, 2019.

amend, (*id.* at 10, 14, 16–17), but also granted limited leave to amend the FAC.  (*Id.* at 8, 10, 19.)  The court again cautioned plaintiffs regarding compliance with Rule 11 and warned that "the court will not turn a blind eye to claims brought baselessly if it later comes to light that such allegations were facially untenable given the evidence already available to the parties."  (*Id.* at 18 n.10.)

On August 14, 2020, plaintiffs filed the operative second amended complaint ("SAC").  (Doc. No. 53.)  In their SAC plaintiffs assert the following claims:  (1) failure to provide required meal breaks; (2) failure to provide required rest breaks; (3) failure to pay overtime wages; (4) failure to pay minimum wages; (5) failure to furnish accurate itemized wage statements; (6) unfair and unlawful business practices under California's Unfair Competition Law ("UCL"); (7) penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA"), as a representative action; and (8) failure to pay all wages and overtime compensation in violation of the FLSA.  (*Id.*)

On August 26, 2020, defendants moved to dismiss and strike the SAC, arguing that plaintiffs' allegations fail to cure the pleading deficiencies previously identified by the court and that the granting of further leave to amend is not warranted.  (Doc. Nos. 54, 55.)  On September 22, 2020, plaintiffs filed their oppositions to the pending motions, contending that they had satisfied this court's prior directives.  (Doc. Nos. 58, 59.)  Alternatively, plaintiffs request the granting of yet further leave to amend if the SAC "inadvertently includes inconsistencies that can be corrected."  (Doc. No. 58 at 6.)  On September 29, 2020, defendants filed their replies to plaintiffs' oppositions.  (Doc. Nos. 60, 61.)

**LEGAL STANDARD**

The purpose of a motion to dismiss brought pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a)

does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). It is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

A.    **Motion to Dismiss**

1.    <u>Whether Plaintiffs Have Alleged Joint Employer Liability</u>

Defendants first argue that plaintiffs have not sufficiently pled joint employer allegations under state or federal law to hold defendants Parks & Resorts, Sequoia, Yosemite, and Delaware North liable with respect to their wage and hours claims and, accordingly, the court should dismiss these defendants from this action.[5]  (Doc. No. 54-1 at 15–18.)  In their opposition, plaintiffs explain that they "agreed to dismiss Defendants [Parks & Resorts], [Sequoia], and [Yosemite]" during the meet and confer process with defendants before the pending motion to dismiss was filed, (Doc. No. 58 at 11), and also appear to indicate they are no longer pursuing their claims as to these three defendants by failing to address them in their opposition to the pending motion.  (*Id.* at 11–14.)  "Such a failure in an opposition brief constitutes abandonment of the claim" and courts regularly dismiss abandoned claims with prejudice.  *Moore v. Apple,*

---

[5]  The court need only analyze whether plaintiffs' joint employer allegations are sufficient under California law because the court intends to dismiss plaintiffs' sole FLSA claim with prejudice for the reasons explained below.

*Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) (collecting cases).  In addition, plaintiffs did not allege any new facts in their SAC that directly link plaintiffs to each of these three defendants, as directed by the court in its order granting plaintiffs' leave to file the SAC.  (*See* Doc. No. 53 at ¶ 14.)  Therefore, the court will dismiss defendant Parks & Resorts, Sequoia, and Yosemite from this action, without further leave to amend.

As for the remaining alleged joint employer, defendant Delaware North, the parties disagree about whether the SAC sufficiently alleges facts both directly linking plaintiffs to Delaware North and demonstrating, if proven, that it exercised control over plaintiffs' employment.

To be liable as a joint employer under California law, an entity must have had the ability to "(1) to exercise control over . . . wages, hours or working conditions, (2) to suffer or permit to work, or (3) to engage, thereby creating a common law employment relationship." *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1233 (N.D. Cal. 2015) (internal quotation marks omitted) (citing *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010)); *see also Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 947 (N.D. Cal. 2019) (same).  Generally, plaintiffs must allege specific facts such as whether "defendant pays the employee's salary and taxes, owns the equipment necessary for the employee to perform his job, has authority to hire, train, fire, or discipline the employee, or has discretion to set the employee's salary." *Ontiveros v. Zamora*, No. 2:08-cv-00567-LKK-DAD, 2009 WL 425962, at *6 (E.D. Cal. Feb. 20, 2009).  However, "a person can be a joint employer without exercising direct control over the employee." *Medina v. Equilon Enterprises, LLC*, 68 Cal. App. 5th 868, 879 (2021).  For example, "[i]f the putative joint employer instead exercises enough control over the intermediary entity to indirectly dictate the wages, hours, or working conditions of the employee, that is a sufficient showing of joint employment." *Id.*; *see also Castaneda v. The Ensign Group, Inc.*, 229 Cal. App. 4th 1015, 1023–24 (2014) (parent corporation exercising control over subsidiary's business can be considered joint employer).

/////

/////

/////

5

1    Plaintiffs' SAC includes the following allegations regarding plaintiffs and Delaware

2  North, which were asserted "on information and belief"[6]:  (i) Delaware North had authority to fire

3  or discipline plaintiffs and putative class members; (ii) plaintiffs and putative class members were

4  required to comply with Delaware North's policies and procedures, "including its Code of

5  Conduct and Corporate Handbook," and signed writings agreeing that violations would subject

6  them to discipline or termination; (iii) plaintiffs were in fact disciplined for allegedly violating

7  Delaware North's policies and procedures; (iv) Delaware North made deductions from plaintiff

8  Vega's paycheck "for the purchase of uniform items"; and (v) Delaware North directed plaintiffs

9  and putative class members "to contact the corporate headquarters to speak with the corporate

10  Human Resources Department at a specified telephone number to resolve any concerns associated

11  with their employment."  (Doc. No. 53 at ¶ 14.)

12    The court finds that these allegations with respect to defendant Delaware North are

13  adequate to allege a joint employer relationship under California law.  The SAC alleges that

14  Delaware North itself had authority to discipline and terminate plaintiffs and plaintiffs were in

15  fact disciplined for alleged violations of Delaware North's policies,[7] which are sufficient

16  allegations to show, if proven, that Delaware North was directly linked to plaintiffs and exercised

17  some control over them.  *See, e.g.*, *Medina*, 68 Cal. App. 5th at 878 (finding joint employer

18  relationship when parent oil company staff told service station operator's employee that they had

19  _____

20  [6]  Defendants suggest the court should discount the new facts alleged by plaintiffs in their SAC as
   merely "based on 'information and belief.'"  (Doc. Nos. 54-1 at 16; 60 at 6.)  However, the Ninth

21  Circuit has held that "[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from
   pleading facts alleged upon information and belief where the facts are peculiarly within the

22  possession and control of the defendant or where the belief is based on factual information that
   makes the inference of culpability plausible."  *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir.

23  2017).  Here, the court will not discount plaintiffs' new allegations because more precise
   information about Delaware North and the exact role it played in governing plaintiffs'

24  employment is "peculiarly within the possession" of the defendants.

25  [7]  Defendants generally argue that shared policies are not enough to allege a joint employer
   relationship.  (Doc. No. 54-1 at 15–16.)  The court has previously expressed its agreement with

26  this general principle.  (Doc. No. 51 at 7.)  However, plaintiffs now allege in their SAC that
   Delaware North had authority to fire and discipline plaintiffs for violating those policies and

27  plaintiffs were in fact disciplined for alleged violations.  (Doc. No. 53 at ¶ 14.)  Those new facts

28  make the difference in alleging a joint employer relationship.

1   the power to fire him and had fired others in the past); *Johnson v. Serenity Transp. Inc.*, No. 3:15-

2   cv-02004-JSC, 2016 WL 270952, at *16 (N.D. Cal. Jan. 22, 2016) (finding allegations that a

3   defendant's removal of truck drivers from their work route effectively removed the drivers from

4   employment and was sufficient to show that defendant exercised some control).  Accordingly,

5   defendants' motion to dismiss plaintiffs' claims based on a joint employer theory of liability

6   against Delaware North will be denied.

7          The court now turns to whether plaintiffs have stated cognizable claims against the

8   remaining defendants:  Delaware North, Kings Canyon, and Tenaya.[8]

9          2.     <u>Meal and Rest Breaks (Claims 1 & 2)</u>

10          California law requires an employer to provide its non-exempt employees with a thirty-

11   minute meal period for every five hours of work.  *See* Cal. Labor Code §§ 226.7, 512.  To be a

12   compliant meal break under California law, "an employer must relieve the employee of all duty

13   for the designated period but need not ensure that the employee does no work."  *Brinker Rest.*

14   *Corp. v. Superior Court*, 53 Cal. 4th 1004, 1034 (2012).  An employee in the housekeeping

15   industry is likewise entitled to a ten-minute rest break for every four hours of work.  *See* 8 Cal.

16   Code Regs. § 11050, subd. 12.  During this ten-minute period, "employees must not only be

17   relieved of work duties, but also be freed from employer control over how they spend their time."

18   *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 270 (2016).  To successfully state a meal or

19

20   [8]  In its order dated October 30, 2019, the court dismissed with prejudice plaintiff Perez's rest
break, UCL, and PAGA claims brought against defendant Kings Canyon as barred under the
21   federal enclave doctrine.  (Doc. No. 36 at 7.)  The court further dismissed with prejudice any
claims brought against defendant Kings Canyon to the extent that they were predicated on
22   Industrial Welfare Commission ("IWC") Wage Order No. 5-2001.  (*Id.*)  Thus, in the SAC,
plaintiffs bring their claims against defendants as follows:  plaintiffs' claim 1 (meal breaks)
23   against all remaining defendants (i.e., Delaware North, Kings Canyon, and Tenaya); plaintiffs'
claim 2 (rest breaks) against defendants Delaware North and Tenaya; plaintiffs' claim 3
24   (overtime) against all remaining defendants; plaintiffs' claim 4 (minimum wage) against all
remaining defendants; plaintiff Vega's claim 5 (wage statements) against all remaining
25   defendants; plaintiffs' claim 6 (UCL) against defendants Delaware North and Tenaya; plaintiffs'
claim 7 (PAGA) against Delaware North and Tenaya; and plaintiffs' claim 8 (FLSA) against all
26   remaining defendants.  (*See* Doc. No. 53 at 14–23.)  The court notes that the parties do not
distinguish between the different defendants in advancing their arguments with respect to the
27   pending motions, referring to the remaining defendants collectively as to all claims.

28

rest break claim, plaintiffs must allege facts specifically identifying an instance where they were deprived of a meal or rest break.  *See Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014), *as amended* (Jan. 26, 2015); *Boyack v. Regis Corp.*, 812 F. App'x 428, 431 (9th Cir. 2020) (holding that a rest break claim fell short of the *Landers'* requirements by not "demonstrating at least one workweek in which [the plaintiffs] were personally deprived of rest breaks").[9]

Plaintiffs contend that the allegations of their SAC cure the deficiencies that the court had previously identified regarding their meal and rest break claims, specifically that plaintiffs had "failed to identify any specific instance(s) where they were deprived of meal or rest breaks." (Doc. No. 51 at 11.)  Plaintiffs allege in the SAC that:  (i) defendants' policies required that plaintiffs "remain on their work premises during rest breaks"; (ii) on April 17, 2018, plaintiff Perez took a 26 minute meal break for a shift over seven hours and did not take full rest breaks due to walking between work stations and rest break areas; (iii) on January 11, 2017, plaintiff Vega[10] took a meal break of less than 30 minutes for an eight hour shift and did not take full rest breaks due to walking between work stations and rest break areas; (iv) on March 2, 4, 11, 2018 and December 23, 2017, plaintiff Perez was not provided meal breaks for shifts over five or six hours long; (v) on an unspecified occasion, plaintiff Perez worked over ten hours but did not take a second meal break; and (vi) with respect to all these alleged violations, defendants did not pay plaintiffs a premium for missed or shortened meal or rest breaks.  (Doc. No. 53 at ¶¶ 19–22.)

These new allegations are sufficient to state meal and rest break claims.  First, plaintiffs allege that defendants have policies controlling where rest breaks can be taken, and such policies

/////

/////

---

[9]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

[10]  The court infers that the SAC's reference to "plaintiff" in this particular allegation was intended to refer to "plaintiff Vega" because the allegation employs female pronouns and is to be "construed in the light most favorable to the non-moving party."  *W. Rsrv. Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir. 1985).

1  facially violate California law.[11]  *See Augustus*, 2 Cal. 5th at 269 (holding that "during rest

2  periods employers must relieve employees of all duties and relinquish control over how

3  employees spend their time"); *Parsittie v. Schneider Logistics, Inc.*, 859 F. App'x 106, 108 (9th

4  Cir. 2021) (finding that employee plausibly state a claim for meal and rest break violations by

5  alleging that his employer had security screening procedures for leaving work premises that

6  "either discouraged him from leaving the facility during his meal break or caused him to sacrifice

7  a portion of his break to leave").[12]  Plaintiffs have also now provided specific instances where rest

8  breaks were not fully taken.  (*See* Doc. No. 53 at ¶ 20.)  As such, plaintiffs "provide[d] facts

9  demonstrating at least one workweek in which [they] were personally deprived of [full] rest

10  breaks."  *Boyack*, 812 F. App'x at 431 (citing *Landers*, 771 F.3d at 646); *see also Haralson v.*

11  *United Airlines*, Inc., 224 F. Supp. 3d 928, 941 (N.D. Cal. 2016) (noting that plaintiff's

12  allegations that an employer's policy requiring that employees be relieved before taking a break

13  plausibly "resulted in late, interrupted, or missed meal and rest breaks").

14      Second, as to the meal break allegations, plaintiff Perez has identified five instances when

15  he was not provided a meal break at all, while plaintiff Vega has alleged one such instance.  (Doc.

16  No. 53 at ¶¶ 21–22.)  Although defendants argue that plaintiffs failed to allege that defendants

17  "prevented" them from taking meal breaks, (Doc. No. 60 at 7), in the court's view defendants

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24  
---
[11]  The California Department Industrial Relations ("DIR") has issued rest break guidance in the

25  form of Frequently Asked Questions.  *See Rest Periods/Lactation Accommodation*, DIR (last
visited Jan. 14, 2022), https://www.dir.ca.gov/dlse/FAQ_RestPeriods.htm.  In FAQ number 5, the

26  DIR's poses the question, "Can my employer require that I stay on the work premises during my
rest period?"  *Id.*  Answering "No," the DIR cites *Augustus*, 5 Cal. 5th at 269 and clarifies that the

27  "employer cannot impose any restraints not inherent in the rest period requirement itself."  *Id.*

28  [12]  See footnote 9, above.

1   read the SAC too narrowly.[13]  *See Mendoza v. Bank of Am. Corp.*, No. 3:19-cv-02491-LB, 2019

2   WL 4142140, at *6 (N.D. Cal. Aug. 30, 2019) (finding that plaintiff sufficiently stated a claim

3   when "plaintiff provided as an example that he was not provided with an uninterrupted meal or

4   rest period 'in or around the end of December 2015 or beginning of January 2016'"); *Perez v.*

5   *Island Hosp. Mgmt. III, LLC*, No. 2:18-cv-04903-DMG-JPR, 2019 WL 3064113, at *3 (C.D. Cal.

6   Feb. 8, 2019) (finding that plaintiff sufficiently stated a claim when alleging the approximate

7   frequency of missed rest breaks and late meal breaks that occurred due to "the heavy workload

8   and insufficient staffing levels").  Here, plaintiffs have alleged that meal breaks were taken late

9   on certain days, which are specific examples of plaintiffs' more general allegations regarding

10  defendants' understaffed facilities and supervisors that required plaintiffs to complete tasks before

11  taking their meal breaks even if it pushed meal breaks past the fifth hour.  (Doc. No. 53 at ¶ 21);

12  *see also Parsittie*, 859 F. App'x at 108 (finding that employees stated cognizable meal and rest

13  break claims by alleging that they were required to "work through their meal [and rest] periods in

14  order to complete their assignments on time").  Plaintiff Perez has also alleged several instances

15  where no meal break was provided at all when working six or more hours, (Doc. No. 53 at ¶¶ 21–

16  22), which is also adequate to state a claim.  *See Ambriz v. Coca Cola Co.*, No. 3:13-cv-03539-

17  JST, 2013 WL 5947010, at *3 (N.D. Cal. Nov. 5, 2013) (internal quotations omitted) (finding that

18  plaintiffs sufficiently stated a claim when alleging that no meal breaks were provided at all since

19  plaintiff was "not required to allege the non-existence of something, such as meal breaks, with

20  any greater specificity than he has done here, because there is no more factual content Plaintiff

21  *could* have alleged").  Moreover, as with the rest breaks, plaintiffs have alleged that defendants'

22

23  [13]  Defendants argue plaintiffs must allege that they were "prevented" from taking breaks, (Doc.
    No. 54-1 at 19), but the California Supreme Court in *Brinker* and *Augustus* held that the employer

24  must relinquish all control over its employees during meal and rest breaks.  *Brinker*, 53 Cal. 4th at
    1040; *Augustus*, 2 Cal. 5th at 272.  Here, plaintiffs allege defendants' policy dictated that meal

25  and rest breaks had to occur on the work premises, which violates that standard because it means
    the employer dictated a portion of plaintiffs' break time.  *See Kaanaana v. Barrett Bus. Servs.,*

26  *Inc.*, 29 Cal. App. 5th 778, 786, 801 (2018) (finding employer policy requiring employees to
    report back to conveyor belt 3-5 minutes before it restarted subjected employees to employer

27  control during portion of break despite argument that amount of time was de minimis), *aff'd*, 11
    Cal. 5th 158 (2021).

28

1    written meal break policies required employees to take meal breaks in designated areas, thus

2    leading to the inference that defendants were exercising control over where an employee's meal

3    breaks could be taken, contrary to California law.  *See Parsittie*, 859 F. App'x at 108 (citing

4    *Augustus*, 2 Cal. 5th at 211) ("An employer may not dictate the way employees spend their breaks

5    or discourage them from taking the full statutorily protected time.").

6         Accordingly, defendants' motion to dismiss plaintiffs' meal and rest break claims will be

7    denied.  The court also reiterates that plaintiffs' rest break claim only remains in this action as

8    asserted against defendant Tenaya and Delaware North because the rest break claim against

9    defendant Kings Canyon was dismissed with prejudice on October 30, 2019.  (Doc. No. 36 at 7.)

10        3.    Minimum and Overtime Wages (Claims 3, 4, & 8)

11        To successfully state a minimum or overtime wage claim under the FLSA, a plaintiff must

12   identify "at least one workweek when he worked in excess of forty hours and was not paid for the

13   excess hours in that workweek, or was not paid minimum wages."  *Landers*, 771 F.3d at 646.  In

14   *Landers*, the Ninth Circuit also advised that:

15            A plaintiff may establish a plausible [overtime wage] claim by
              estimating the length of her average workweek during the
16            applicable period and the average rate at which she was paid, the
              amount of overtime wages she believes she is owed, or any other
17            facts that will permit the court to find plausibility.  Obviously, with
              the pleading of more specific facts, the closer the complaint moves
18            toward plausibility.  However, like the other circuit courts that have
              ruled before us, we decline to make the approximation of overtime
19            hours the *sine qua non* of plausibility for claims brought under the
              FLSA.  After all, most (if not all) of the detailed information
20            concerning a plaintiff-employee's compensation and schedule is in
              the control of the defendants.
21

22   *Landers*, 771 F.3d at 645 (citations omitted).  This FLSA pleading requirement applies to

23   minimum and overtime wage claims under state law as well.  *See Boyack*, 812 F. App'x at 431.

24        The court previously dismissed plaintiffs' claims for unpaid minimum and overtime

25   wages because it found that plaintiff had not "allege[d] facts demonstrating there was at least one

26   workweek in which they worked in excess of forty hours and were not paid overtime wages."

27   (Doc. No. 51 at 13–14) (quoting *Landers*, 771 F.3d at 646).  The court also explained that:  (i)

28   plaintiff Vega's allegations that she was "often" not paid for hours worked failed to indicate what

11

1    constituted "often" and whether "often" represented an "average workweek during the applicable

2    period"; and (ii) plaintiff Vega had also failed to allege "the average rate at which she was paid"

3    or an estimate of the "amount of overtime wages she believes she is owed." (*Id.*) (quoting

4    *Landers*, 771 F.3d at 646).

5           In the SAC, plaintiffs have alleged that they were not paid all minimum wages and

6    overtime hours because they were "often" paid less than the overtime hours worked, including

7    when:

8        •   plaintiff Vega "worked approximately 48 hours during a single week in the pay period

9            ending on October 8, 2017, but [] was paid for less than 48 hours during that week";

10       •   plaintiff Vega "was not paid for all hours worked over 40 hours at [the overtime rate]" for

11           the pay period ending on June 18, 2017; and

12       •   plaintiff Perez "worked for seven (7) days in a row on multiple occasions, but was not

13           paid overtime wages for the first eight hours worked during the seventh consecutive day,

14           including . . . [the week of] September 27, 2016 to October 3, 2016.

15   (Doc. No. 53 at ¶ 25.)  Plaintiffs also have alleged that the regular rate of pay used to determine

16   their overtime wages was calculated incorrectly due to their participation in fringe benefit

17   programs, which plaintiff Perez participated in from October 3, 2016 until February 4, 2018 and

18   plaintiff Vega participated in from February 28, 2015 until February 25, 2018.  (*Id.* at ¶ 27.)

19          Nonetheless, and despite the added allegations, plaintiffs still fall short of stating a

20   plausible claim for failure to pay minimum and overtime wages.  Critically, despite the court's

21   guidance, plaintiffs again have failed to allege the approximate number of hours worked per week

22   during the applicable period, or roughly how often plaintiffs worked more than forty hours per

23   week or eight hours per day (thus entitling them to overtime pay).  *See Boyack v. Salon Mgmt.*

24   *Corp.*, No. 8:18-cv-01233-AG-DFM, 2019 WL 1744855, at *4 (C.D. Cal. Feb. 11, 2019)

25   (dismissing plaintiffs' hourly wage claims despite "somewhat fact specific" allegations including

26   pleading three occasions when plaintiffs pay rate was incorrect and two other occasions when

27   they were paid purely commission instead of minimum wage), *aff'd sub nom. Boyack v. Regis*

28   *Corp.*, 812 F. App'x 428 (9th Cir. 2020).  "Nor do plaintiff[s] allege generally the amount of

minimum and overtime wages they believe they are owed," or allege how or how frequent their

regular rate of pay was miscalculated and resulted in underpayment or any particular workweek

when an alleged underpayment occurred or any hourly wage rate at all.  *Id.*; *see also Boian v.*

*Schneider Logistics Transloading & Distrib., Inc.*, No. 5:20-cv-00109-MWF-AFM, 2020 WL

5356707, at *7 (C.D. Cal. May 28, 2020) (dismissing minimum and overtime wage claims, in

part, due to plaintiff's failure to plead their normal hourly rate).  Although, as noted, the

"approximation of overtime hours [is not] the *sine qua non* of plausibility for claims" in the Ninth

Circuit, plaintiffs must still allege "any other facts that will permit the court to find plausibility,"

and plaintiffs have again failed to do so here.  *Landers*, 771 F.3d at 645.  For instance, plaintiffs

have also failed to allege what constituted "often" or "on multiple occasions" or what plaintiffs

typical work schedule entailed, even though the court previously identified these deficiencies.

(Doc. No. 51 at 13–14); *see also Avalos v. Amazon.com LLC*, No. 1:18-cv-00567-DAD-BAM,

2018 WL 3917970, at *4 (E.D. Cal. Aug. 14, 2018) (dismissing an overtime claim, in part, due to

plaintiff's failure to allege "the typical schedule or the approximate number of hours worked

during a given period"); *Bush v. Vaco Tech. Servs., LLC*, No. 5:17-cv-05605-BLF, 2018 WL

2047807, at *9 (N.D. Cal. May 2, 2018) (concluding that plaintiff's "bare assertion that she

'regularly' worked more than the statutory requirement is conclusory and insufficient under the

standard set forth in *Landers*"); *Reilly v. Recreational Equip., Inc.*, No. 3:18-cv-07385-LB, 2019

WL 1024960, at *4 (N.D. Cal. Mar. 4, 2019) (concluding that plaintiff's allegations that she

"worked numerous shifts" without adequate compensation was insufficient to state a claim).

In short, though plaintiffs include specific dates in their SAC, their allegations remain

vague and amount only to "legal conclusion[s] for which the [SAC] contains no supporting

factual allegations."  *Boyack*, 812 F. App'x at 430 (affirming dismissal when plaintiffs "merely

alleged specific weeks for which they are 'owed' a specified amount of overtime pay").  Courts

regularly dismiss wage claims supported only by such threadbare allegations.  *See, e.g.*, *Hines v.*

*Constellis Integrated Risk Mgmt. Servs.*, No. 2:20-cv-06782-JWH-PLA, 2021 WL 4432833, at *4

(C.D. Cal. Aug. 24, 2021) (dismissing a minimum wage claim with prejudice where the plaintiff

alleged "only one time period—the week of February 11, 2019—during which Defendants

1  allegedly failed to pay [plaintiff] the minimum wage" because it was a "bare assertion . . . not

2  supported by any evidentiary facts"), *appeal filed* (No. 21-56048); *McMillian v. Overton Sec.*

3  *Servs., Inc.*, No. 3:17-cv-03354-JSC, 2017 WL 4150906, at *3 (N.D. Cal. Sept. 19, 2017)

4  (dismissing an overtime claim because "rather than alleging a typical number of hours worked,

5  Plaintiff makes a vaguer reference to work 'in excess of eight hours in a day'"); *Tavares v.*

6  *Cargill Inc.*, No. 1:18-cv-00792-DAD-SKO, 2019 WL 2918061, at *4 (E.D. Cal. July 8, 2019)

7  ("The conclusory allegation that plaintiff and others worked overtime does not allege any facts—

8  such as the typical work schedule or the approximate number of hours works during any given

9  period—that could plausibly support a claim for unpaid overtime.").

10     Accordingly, defendants' motion to dismiss plaintiffs' minimum wage and overtime wage

11  claims will be granted.[14]  Because plaintiffs have twice failed to cure all of the pleading

12  deficiencies identified by the court in its previous two orders dismissing plaintiffs' claims, (Doc.

13  Nos. 36 at 13–14; 51 at 12–13), and plaintiffs' proposed third amended complaint (attached to

14  their opposition) still fails to rectify some of the previously noted deficiencies, (Doc. No. 58-2),

15  the court finds that further amendments would be futile and unduly prejudicial to defendants.  *See*

16  *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) ("A district court may deny a

17  plaintiff leave to amend . . . if the plaintiff had several opportunities to amend its complaint and

18  repeatedly failed to cure deficiencies"); *Boyack*, 812 F. App'x at 431 (affirming dismissal of

19  wage claims without leave to amend due to a plaintiff's failure to cure pleading deficiencies).

20  /////

21  /////

22

23  [14] Plaintiffs' reliance on the decision in *Varsam v. Lab'y Corp. of Am.*, 120 F. Supp. 3d 1173, 1177–78 (S.D. Cal. 2015) is not persuasive.  The court already considered that case when it dismissed plaintiffs' FAC and acknowledged that "[t]here is some variation among district courts as to how strictly *Landers* should be applied."  (Doc. No. 51 at 12); *see also Avalos*, 2018 WL 3917970, at *3 (collecting cases).  The court impliedly rejected application of the less demanding standard articulated in *Varsam* when it dismissed plaintiffs' claims, while acknowledging that some "district courts have applied a less demanding pleading standard in concluding that allegations remarkably like the ones made here are sufficient," and then cited *Varsam* as one example.  (Doc. No. 51 at 12.)  Here, the court hews to the standard articulated and applied in its order granting defendants' motion to dismiss the FAC.  (*Id.*)

14

1          4.      Plaintiff Vega's Allegations of Inaccurate Wage Statements (Claim 5)

2          California Labor Code § 226 requires employers to provide itemized wage statements to

3  employees.  To recover damages in connection with a violation of this provision, "an employee

4  must suffer injury as a result of a knowing and intentional failure by an employer to comply with

5  the statute," but this injury requirement is not "satisfied simply because one of the nine itemized

6  requirements . . . is missing from a wage statement."  *Tavares*, 2019 WL 2918061, at *6 (citing

7  *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011)).  An employee must also

8  demonstrate that they suffered "*an injury* arising from the missing information."  *Price*, 192 Cal.

9  App. 4th at 1142–43.  In its last order dismissing both of plaintiffs' wage statement claims

10  brought under § 226 and granting leave to amend only as to plaintiff Vega's claim, the court

11  noted that "if Vega's wage statements were indeed inaccurate [due to her minimum wage and

12  overtime claims], plaintiffs should have identified at least one noncompliant wage statement and

13  pled just that."  (Doc. No. 51 at 15.)

14          In the SAC, plaintiff Vega alleges that she received noncompliant wage statements

15  because the statements:  (i) "state that her employer is DNC P&R at Tenaya, Inc., though the

16  actual name of this employer is DNC Parks & Resorts at Tenaya, Inc."; and (ii) "did not

17  accurately reflect all of the hours she worked and did not state an accurate overtime rate of pay,

18  including her wage statement for the pay period ending on October 8, 2017, which did not include

19  all of the hours she worked and thus inaccurately stated her hours worked during that pay period."

20  (Doc. No. 53 at ¶ 29.)

21          Plaintiff Vega's allegations fail to state a plausible claim for several reasons.  First, in its

22  previous order, the court specifically rejected the proposition that the abbreviation of an

23  employer's name on the wage statement was a sufficient basis upon which plaintiff Perez could

24  state a cognizable claim.  (Doc. No. 51 at 15) (citing *Elliot v. Spherion Pac. Work, LLC*, 572 F.

25  Supp. 2d 1169, 1179 (C.D. Cal. 2008), *aff'd*, 368 F. App'x 761 (9th Cir. 2010); *Noori v.*

26  *Countrywide Payroll & HR Sols., Inc.*, 43 Cal. App. 5th 957, 964 (2019), *review denied* (Mar. 25,

27  2020)).  Plaintiff Vega now makes the exact same argument that the court has rejected in

28  addressing a claim brought by plaintiff Perez.  (*Id*.)  "[T]he court cannot take seriously any claim

15

that plaintiff [Vega] could have been confused and injured by such a minor abbreviation of [her] employer's name."  (*Id.*)  Thus, the first allegation added by plaintiff Vega is clearly insufficient to state a claim under § 226.

Second, plaintiff Vega's lone allegation that her October 8, 2017 wage statement "did not include all of the hours she worked and did not state an accurate overtime rate of pay" is too vague and does not allege a cognizable injury.  *See Sherman v. Schneider Nat'l Carriers, Inc.*, No. 2:18-cv-08609-AB-JC, 2019 WL 3220585, at *5 (C.D. Cal. Mar. 6, 2019) (citing *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1337 (2018)) (dismissing plaintiff's wage statement claim when plaintiff only alleged "that the amount he was paid was incorrect, not that the wage statements inaccurately reflected the wage he was paid"); *Tavares*, 2019 WL 2918061, at *6 (dismissing an inaccurate wage statement claim where the plaintiff alleged a "failure to include the total number of hours worked and a general allegation that plaintiff and other class members 'suffered injury and damage'"); *see also Maldonado*, 22 Cal. App. 5th at 1336 (explaining that the "failure to pay overtime at the appropriate rate" does not generate "a wage statement injury justifying the imposition of wage statement penalties").

Third, and finally, plaintiff Vega's claim is derivative of her insufficiently pled allegations regarding her minimum wage and overtime claims.  *See Boyack*, 2019 WL 1744855, at *5 (dismissing plaintiff's inaccurate wage statements claim because the "claim is derivative of Plaintiffs' claim for failure to pay minimum and overtime wages, which was also insufficiently alleged"); *Bush*, 2018 WL 2047807, at *10 (same).  In their opposition to the pending motion to dismiss, plaintiffs even admit that this claim relies on "predicate violations," but they argue that one of those predicate violations was "based on Defendants' unlawful policies and practices regarding providing meal and rest breaks," which are now properly pled claims.  (Doc. No. 58 at 20.)  But the allegations in the SAC do not bear out that representation—the SAC's § 226 claim relies solely on plaintiff Vega's minimum wage and overtime claims (Doc. No. 53 at ¶ 29), which the court has found have not been sufficiently pled.

Accordingly, defendants' motion to dismiss plaintiff Vega's § 226 claim will be granted. Because of the paucity of detail in the SAC with regard to plaintiff Vega's § 226 claim and the

1  plainly insufficient injury allegation plaintiff Vega added in the SAC, the court concludes that

2  granting further leave to amend this claim would also be futile and prejudicial to defendants.[15]

3  *See Leadsinger*, 512 F.3d at 532.

4          5.     <u>UCL (Claim 6) and PAGA (Claim 7)</u>

5          The parties agree that plaintiffs' UCL and PAGA claims are derivative of their underlying

6  claims, and thus, either rise or fall with those underlying claims.  (Doc. Nos. 54-1 at 23–24; 58 at

7  21.)  As such, the court will deny defendants' motion to dismiss plaintiffs' UCL claim and PAGA

8  claim to the extent they are based on alleged violations of the California Labor Code §§ 226.7,

9  512, and sections of IWC Wage Order No. 5-2001 addressing meal and rest breaks.  *See Safeway,*

10  *Inc. v. Superior Ct.*, 238 Cal. App. 4th 1138, 1155–56 (2015) (finding "that a UCL claim may be

11  predicated on a practice of not paying premium wages for missed, shortened, or delayed meal

12  breaks attributable to the employer's instructions or undue pressure"); *Wesson v. Staples the Off.*

13  *Superstore, LLC*, 68 Cal. App. 5th 746, 760 (2021) ("Among the Labor Code provisions a PAGA

14  plaintiff may seek to enforce are those imposing . . . rest and meal period requirements."), *review*

15  *denied* (Dec. 22, 2021).  But the court will dismiss plaintiffs' UCL claim and PAGA claim to the

16  extent they are derivative of plaintiffs' third, fourth, fifth, and eighth claims.  The court also

17  reiterates that plaintiffs UCL and PAGA claims will only proceed in this action against

18  defendants Tenaya and Delaware North because plaintiffs' UCL and PAGA against Kings

19  Canyon were dismissed with prejudice on October 30, 2019.  (Doc. No. 36 at 7.)

20          6.     <u>Class Allegations</u>

21          Finally, defendants seek dismissal of plaintiffs' class allegations as insufficiently pled

22  under Rule 12(b)(6).  (Doc. No. 54-1 at 25.)  However, "compliance with Rule 23 is not to be

23  tested by a motion to dismiss for failure to state a claim."  *Gillibeau v. City of Richmond*, 417

24  F.2d 426, 432 (9th Cir. 1969).  The court therefore declines to address the issue now as it is more

---

[15]  The court also notes that plaintiff Vega requested leave to amend this claim "[t]o the extent that the Court finds that this claim is subject to a one-year statute of limitations."  (Doc. No. 58 at 21.)  Despite defendants urging, the court does not find that plaintiffs' claim is completely time barred because § 226 has separate limitations periods for damages (three years) and civil penalties (one year).  *See Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1024–25 (E.D. Cal. 2015).  Here, plaintiff Vega has sought both types of relief.  (Doc. No. 53 at ¶ 51.)

1    appropriately suited for the class certification stage of this litigation.  *See Meyer v. Nat'l Tenant*

2    *Network, Inc.*, 10 F. Supp. 3d 1096, 1104 (N.D. Cal. 2014) (finding no authority to dismiss class

3    allegations through a Rule 12(b)(6) motion and concluding that "such arguments are more

4    appropriately addressed through Rule 23 for procedural reasons"); *Kirchner v. Shred-it USA Inc.*,

5    No. 2:14-1437 WBS, 2014 WL 6685210, at *3 n.3 (E.D. Cal. Nov. 25, 2014) (declining to

6    dismiss class claims before a motion for class certification); *Larson v. Harman Mgmt. Corp.*, No.

7    1:16-cv-00219-DAD-SKO, 2016 WL 6298528, at *5 (E.D. Cal. Oct. 27, 2016) (same).

8    Accordingly, defendants' motion to dismiss plaintiffs' class allegations is denied without

9    prejudice to be renewed at the appropriate time and through the appropriate mechanism.

10   **B.     Motion to Strike**

11           Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an

12   insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Of these

13   categories, defendants contend that various factual allegations in the SAC are "impertinent."

14   (Doc. No. 55 at 2.)

15           "Impertinent matter consists of statements that do not pertain, and are not necessary, to the

16   issues in question."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010)

17   (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (3d

18   ed.)).  Here, defendants move to strike most of the factual allegations underpinning plaintiff

19   Perez's meal and rest break claims, minimum and overtime wage claims, and joint employer

20   liability assertion.  (*See, e.g.*, Doc. No. 55-1 at 10.)  Defendants also seek to strike reference to a

21   payroll record made by plaintiff Veg in supports of her overtime claim.  (*Id.* at 13.)  These

22   allegations are directly pertinent to, and necessary to the resolution of, the issues presented in this

23   case and the court will not strike them as impertinent.

24           At bottom, defendants argue that plaintiffs' allegations are "contradicted" by deposition

25   testimony of plaintiff Perez and a copy of plaintiff Vega's June 18, 2017 payroll record.  (Doc.

26   No. 55-1 at 4, 10.)  However, that the allegations in the complaint are "contradicted" by extrinsic

27   /////

28   /////

18

1    evidence attached to defendants' motion is not an appropriate basis for a motion to strike.[16]  Fed.

2    R. Civ. P. 12(f).  Moreover, the parties' introduction of deposition testimony—along with their

3    dueling interpretations of that testimony—suggest the converting of the pending motion to strike

4    into a motion for summary judgment, which the court declines to do at this juncture in the case.

5    *See Khan v. K2 Pure Sols., L.P.*, No. 3:12-cv-05526-WHO, 2013 WL 6503345, at *10 (N.D. Cal.

6    Dec. 4, 2013) (quoting *Whittlestone*, 618 F.3d at 974) ("The Ninth Circuit has held that a motion

7    to strike should be denied if it is 'really an attempt to have certain portions of [the] complaint

8    dismissed or to obtain summary judgment against [the plaintiff] as to those portions of the suit. . .

9    .'").  It follows that the court will not consider deposition testimony in disposing of defendants'

10   motion to strike because "the grounds for a motion to strike must appear on the face of the

11   pleading under attack."  *Transamerica Life Ins. Co. v. Rabadi*, No. 2:15-cv-07623-RSWL-E,

12   2016 WL 7444912, at *1 n.1 (C.D. Cal. Mar. 21, 2016) (declining to consider a submitted

13   declaration in ruling on the defendants' motion to strike).

14         Accordingly, the court will deny defendants' motion to strike.[17]

15                                      **CONCLUSION**

16         For the reasons explained above:

17      1.      Defendants' motion to dismiss (Doc. No. 54) is granted, in part:

18              a.      Plaintiffs' third, fourth, fifth, and eighth claims are dismissed, without

19                      further leave to amend;

20              b.      Defendants' motion to dismiss plaintiffs' first, second, sixth, and seventh

21                      claims is denied; and

22   /////

23   _____

24   [16]  Despite defendants' urging, the court declines to incorporate by reference plaintiff Vega's June
     18, 2017 payroll record.  *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159 (9th Cir.

25   2012) ("[T]he district court may, but is not required to incorporate documents by reference.")

26   [17]  The court also rejects defendants' argument that plaintiffs exceeded the scope of the leave
     granted by the court to file the SAC by including "baseless" allegations, (Doc. No. 61 at 5),

27   because defendants failed to identify a new claim or party that was improperly added by
     plaintiffs.  *See Big O Relief v. Cnty. of Kern*, No. 1:17-cv-01566-LJO-BAM, 2018 WL 1210976,

28   at *12 (E.D. Cal. Mar. 8, 2018).

     c.     The following defendants are dismissed from this action:

         i.     Delaware North Companies Parks & Resorts, Inc.;

         ii.     DNC Parks & Resorts at Sequoia; and

         iii.     DNC Parks & Resorts at Yosemite, Inc.

2.     Defendants motion to strike (Doc. No. 55) is denied.

3.     The remaining defendants shall file their answer to the remaining claims asserted by plaintiffs in their second amended complaint within twenty-one (21) days of service of this order.

4.     The Clerk of the Court is directed to update the docket to reflect that the following defendants have been terminated from this action as named defendants:

         i.     Delaware North Companies Parks & Resorts, Inc.;

         ii.     DNC Parks & Resorts at Sequoia; and

         iii.     DNC Parks & Resorts at Yosemite, Inc.

5.     The Clerk of the Court is also directed to correct the docket to reflect that defendant DNC Parks & Resorts at Asilomar, Inc. was dismissed from this action on October 30, 2019 and had been terminated as a named defendants in this action. (*See* Doc. No. 36 at 10.)

6.     The Clerk of the Court is also directed to correct the docket to reflect that plaintiff Maria Socorro Vega was added as a named plaintiff in this action on November 14, 2019, when plaintiffs filed their first amended complaint.  (*See* Doc. No. 38.)

IT IS SO ORDERED.

Dated:   **February 9, 2022**                                 
UNITED STATES DISTRICT JUDGE